Henry William KNAUZ, Plaintiff,

v.

TOYOTA MOTOR SALES, USA, INC., Defendant.

No. 89 C 3189.

United States District Court, N.D. Illinois, E.D.

Aug. 29, 1989.

Richard M. Karr and Elliot B. Pollock, Hardt & Stern, P.C., Chicago, Ill., for plaintiff.

William J. Gibbons and Eric D. Brandfonbrener, Latham & Watkins, Chicago, Ill., for defendant.

MEMORANDUM OPINION
AND ORDER

NORDBERG, District Judge.

Before the Court is a question of first impression:[1] Whether the Illinois Motor

1. So counsel have informed the Court.

Vehicle Franchise Act ("IMVFA") may be invoked by a dealer whose hopes for a new franchise were thwarted when the franchisor revoked a letter of intent setting forth conditions, which if met, may have resulted in the award of a franchise. The Court holds that on the facts pleaded in the complaint the dealer may not.

## I. FACTS

Because this issue is put to the Court by way of Fed.R.Civ.P. 12(b)(6), the well-pleaded factual allegations of the complaint are deemed true and will be stated as though they were. *See generally Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985). Henry W. Knauz is a motor vehicle dealer[2] who applied to Toyota Motor Sales, USA, Inc. ("TMS") to become a dealer of the Lexus line of automobiles, a new TMS brand to be distributed beginning in late 1989. Knauz did not previously deal in TMS products.

By a letter dated April 29, 1988, and accepted by Knauz seven days later, TMS stated its intent to award Knauz (through a close corporation) a Lexus dealership provided that he fulfilled a number of conditions. One condition was for the submission of a detailed set of building plans. The parties twice agreed to extend the deadline for submission of the plans, which Knauz eventually turned in by the extended deadline of August 8, 1988. Although the plans fully met TMS's stated criteria, TMS falsely claimed that the plans were insufficient, and rescinded the letter of intent as stated in a letter dated August 15, 1988. TMS thus breached the terms of the letter of intent, Knauz claims.

Similarly, Knauz accuses TMS of acting arbitrarily and in bad faith by establishing new building plan guidelines that were not in existence at the time the letter of intent was signed; insisting upon retroactive compliance with the guidelines by some prospective franchisees, such as Knauz, while exempting others from full compliance with the revised guidelines; and otherwise inconsistently requiring full compliance with the dealer requirements by some dealers but not others.

Plaintiff subsequently brought this diversity action pursuant to 28 U.S.C. § 1332,[3] alleging a breach of contract (Count I) and a violation of IMVFA § 4, Ill.Rev.Stat. ch. 121½, para. 754 (Count II). TMS then moved to dismiss Count II.

## II. LAW

Section 4(a) of the IMVFA declares unlawful a variety of "unfair methods of competition and unfair and deceptive practices" set forth in the remainder of § 4. Knauz asserts that TMS's actions violate § 4(b), which states:

> It shall be deemed a violation for any manufacturer, factory branch, factory representative, distributor or wholesaler, distributor branch, distributor representative or motor vehicle dealer to engage in any action with respect to a franchise which is arbitrary, in bad faith or unconscionable and which causes damage to any of the parties or to the public.

Ill.Rev.Stat. ch. 121½, para. 754(b).

Although TMS does not contest that it is a manufacturer or distributor as defined by IMVFA § 2(g), Ill.Rev.Stat. ch. 121½, para. 752(g), it contends that because Knauz has never been a dealer for TMS, he cannot invoke the IMVFA. The argument is that § 4(b), by prohibiting acts "with respect to a franchise," requires an action taken with respect to an existing franchise, as defined by IMVFA § 2(i), Ill.Rev.Stat. ch. 121½, para. 752(i). Because the letter of intent did not create a franchise, Knauz's IMVFA claim should fall. TMS purports to find

---

**2.** Knauz does not allege in his complaint that he is a motor vehicle dealer, but only that he is an individual residing in Illinois. In their briefs, however, both sides have agreed that Knauz already deals in motor vehicles other than defendant's. The rules of procedure are to be applied "to secure the just, speedy, and inexpensive determination of every action." Fed.R. Civ.P. 1. Because Knauz's status as a dealer is essential to his cause of action under the

IMVFA, the Court will treat the complaint as amended by the consent of the parties to allege that Knauz is a motor vehicle dealer. No point would be served by dismissal with leave to re-plead this fact.

**3.** Knauz resides in Illinois; TMS is a Delaware corporation with its principal place of business in California.

additional support for its argument in IMVFA § 8, Ill.Rev.Stat. ch. 121½, para. 758, defining the agreements covered by the Act. TMS concludes that Knauz is nothing more than a "dealer applicant" with respect to TMS, and thus falls outside the IMVFA's protection.

Knauz counters that TMS has ignored three sections of the IMVFA: (1) § 13, Ill.Rev.Stat. ch. 121½, para. 763, which allows "franchisees and motor vehicle dealers" to bring private actions for violations of the Act; (2) § 2(h), Ill.Rev.Stat. ch. 121½, para. 752(h), defining "motor vehicle dealer" as a person who sells new or used motor vehicles in the ordinary course of business; and (3) § 2(k), defining "franchisee" to include "motor vehicle dealer[s] to whom a franchise is offered or granted." Knauz argues that he is both a motor vehicle dealer and, as offeree of a franchise, a franchisee. Either status gives him a right to sue for violations of the Act.

The Court begins its analysis with § 13, which creates private rights of action under the IMVFA. In his memorandum to the Court, Knauz quotes the first sentence of this statute as follows: "Any *franchisee* or *motor vehicle dealer* who suffers any loss of money or property ... may bring an action for damages. (Emphasis added)[.]" Memorandum in Response, at 2. However, the first sentence of § 13 reads in full:

Any franchisee or motor vehicle dealer *who suffers any loss* of money or property, real or personal, *as a result of the use or employment* by a manufacturer, wholesaler, distributor, distributor branch or division, factory branch or division, wholesale branch or division, or any agent, servant or employee thereof, *of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by this Act* may bring an action for damages and equitable relief, including injunctive relief.

As the language highlighted by the Court indicates, § 13 ties a private cause of action to a specific "unfair or deceptive act or practice" that the IMVFA prohibits and

further limits enforcement of the Act to "any franchisee or motor vehicle dealer." In this case, the plaintiff has alleged a violation of § 4(b), which the Court previously set out in full. In relevant part, § 4(b) forbids a "manufacturer" or "distributor" from taking an arbitrary, bad faith or unconscionable action "with respect to a franchise" that causes damage "to any of the parties or to the public."

Whether Knauz has a claim under § 4(b) therefore turns on the meaning of "motor vehicle dealer," "franchise" and "franchisee." Section 2 gives these definitions:

(h) "Motor vehicle dealer", any person who, in the ordinary course of business, is engaged in the business of selling new or used motor vehicles to consumers or other end users.

(i) "Franchise", an oral or written arrangement for a definite or indefinite period in which a manufacturer, distributor or wholesaler grants to a motor vehicle dealer a license to use a trade name, service mark, or related characteristic, and in which there is a community of interest in the marketing of motor vehicles or services related thereto at wholesale, retail, leasing or otherwise....

(k) "Franchisee", a motor vehicle dealer to whom a franchise is offered or granted.

The § 4(b) claim stated by Knauz requires as one of its elements that a wrongful action be taken with respect to a "franchise." The statutory definition of franchise contemplates an existing "oral or written arrangement for a definite or indefinite period" with "a motor vehicle dealer." A "motor vehicle dealer" is in turn defined as a person presently engaged in the sale of motor vehicles. Section 4(b) thus protects an existing dealership from wrongful actions taken against an existing franchise. The plain language of the statute—and it is the plain language which this Court must apply, see *In re Marriage of Logston*, 103 Ill.2d 266, 277, 82 Ill.Dec. 633, 637, 469 N.E.2d 167, 171 (1984)[4]—forecloses the

---

**4.** The Court thus did not need to resort to the legislative history proffered by TMS. In any event, the speech of Sen. Berman did not clearly

support the statutory construction proposed by either party.

claim of a dealer who has applied for, but not been granted, a new franchise.

Knauz lodges two main challenges to this construction of the statute. The first is that it improperly interjects the qualification "existing" into the definition of franchise. This qualification, however, is a natural reading of the definition, which refers in the present tense to an "oral or written arrangement" that "grants" the use of a "trade name, service mark, or related characteristic." The definition notably does not refer to an offer to grant a franchise in the future. If anything, accepting Knauz's construction would improperly interject the phrase "or offer of a franchise" into § 4(b)'s condemnation of unjustified acts "with respect to a franchise."

This distinction between existing franchises and offers of franchises is reinforced by IMVFA § 8, which in detailing the agreements to which the Act applies, includes "the franchise offering" and "the franchise agreement." The statute itself thus distinguishes an existing franchise agreement from a franchise offering. This distinction, combined with the definition of "franchise," reinforces the Court's conclusion that § 4(b) refers to an existing franchise relationship.

Knauz's second challenge to the Court's construction is that it renders the statutory term "franchisee" a nullity. But Knauz's reliance on the definition of "franchisee" is misplaced. Like the term "franchise," the term "franchisee" is defined with reference to an existing "motor vehicle dealer," but here the definition is extended to include a dealer who has been offered a franchise. The statutory language is clear that a franchisee must at a minimum be a motor vehicle dealer. The reference to an offeree, then, would include motor vehicle dealers who have been offered their first franchise, or maybe an additional franchise, but it would not include persons who are not already motor vehicle dealers.[5]

Knauz is a motor vehicle dealer, and (according to his complaint) at least an offeree as well.[6] This does not mean, however, that § 13 entitles him to invoke all of the protections of § 4. As noted above, § 13 ties private causes of action by franchisees and motor vehicle dealers to specific wrongs proscribed by other portions of the IMVFA. Some sections of the statute specifically prohibit actions taken with respect to motor vehicle dealers, others prohibit actions taken against franchisees, and others prohibit actions taken against both.

An example of the last category is § 7, Ill.Rev.Stat. ch. 121½, para. 757, prohibiting unreasonable restrictions upon both

---

**5.** In the course of its own arguments, TMS has protested that the statute must be construed to forbid actions by both motor vehicle dealers and non-dealers with respect to offers of franchises. TMS reasons that to allow actions by dealers with respect to franchise offers while denying similar actions to non-dealers is irrational. But it is IMVFA § 2(k) which draws this distinction, not the Court, and in the absence of a constitutional challenge the Court does not judge the rationality of legislative distinctions between classes of persons. It is telling that in the course of its argument, TMS is forced to misquote § 2(k), at one point stating: "A franchisee is *anyone* 'to whom a franchise is offered or granted.'" TMS Reply Memorandum, at 7 (emphasis supplied). As the Court already has noted, the statutory definition in fact reads: "'Franchisee,' a *motor vehicle dealer* to whom a franchise is offered or granted." § 2(k) (emphasis supplied). *See also* § 8 (stating that the Act applies to all written and oral agreements with motor vehicle dealers). And for whatever it is worth, the Court hardly finds it irrational that the General Assembly might grant protection to one group of persons while denying this

protection to a similarly situated group; this sort of thing happens all the time, and is an inevitable result of a legislative process sensitive to the lobbying demands of organized interests. The cases TMS has cited in support of its argument are factually dissimilar—they involve allegations by would-be franchisees that distributors have unreasonably withheld permission for the assignment of a franchise—but more importantly, involve construction of the dealership statutes of other states. *See Beard Motors, Inc. v. Toyota Motor Distributors, Inc.*, 395 Mass. 428, 480 N.E.2d 303, 307 (1985) (Massachusetts law); *Statewide Rent–A–Car, Inc. v. Subaru of America*, 704 F.Supp. 183, 185 (D.Mont.1988) (Montana law). TMS has not even attempted to show that these dealership statutes are identical in all relevant particulars to the Illinois law, which creates private rights of actions by motor vehicle dealers and motor vehicle dealers who have been offered franchises, see §§ 2(k) and 13.

**6.** TMS argues that Knauz is not even an offeree, but on this motion to dismiss the Court will assume that he is.

dealers and franchisees. Similarly, at least one subpart of § 4 protects franchisees specifically as opposed to motor vehicle dealers generally. That subpart, § 4(d)(5), makes it unlawful for manufacturers and others "to require a franchisee to participate in an advertising campaign or contest or any promotional campaign, or to purchase or lease any promotional material, training materials, showroom or other display decorations or materials at the expense of the franchisee." Section 4(d)(5) thus protects a motor vehicle dealer who has been offered a new or additional franchise from coerced participation (perhaps as a precondition to receipt of the franchise) in advertising activities. *See also* IMVFA § 12, Ill.Rev.Stat. ch. 121½, para. 762(a) (discussing the arbitrability of disputes regarding the offer of an additional franchise to a dealer).

Other references in § 4, on the other hand, specifically protect "motor vehicle dealers" from outlawed actions without reference to "franchisee" status. *See, e.g.,* § 4(c). The old maxim is that the expression of one thing is the exclusion of another, and there is no reason not to give this maxim effect here, especially considering that the statute defines both "motor vehicle dealer" and "franchisee," and goes on to specifically prohibit actions taken with respect to each. To treat the terms as interchangeable would render one of them redundant.

Section 13's creation of private rights of action by "franchisees or motor vehicle dealers," then, does not allow both franchisees and motor vehicles to protest all of the wrongs proscribed by § 4, but merely makes clear that both categories of dealers have standing to seek legal and equitable remedies for wrongs which they are protected against by the IMVFA according to their status. Section 4(b) does not proscribe actions against franchise offerees, but rather actions against dealers with existing franchises. Knauz therefore has no cause of action under this section.[7]

## III. CONCLUSION

The Court therefore dismisses Count II of the complaint. Because plaintiff cannot amend his complaint to state a cause of action under IMVFA § 4(b), the dismissal is with prejudice.

---

7. Because it has ruled against plaintiff, the Court has construed the statute as liberally as the language will (in the Court's view) bear. The Court thus does not address the parties' argument about whether the treble damage provision contained in § 13 renders the Act a penal statute that must be construed narrowly. Even a broad construction of the Act does not support plaintiff's claim.