**Henry William KNAUZ, Plaintiff,**

v.

**TOYOTA MOTOR SALES, U.S.A., INC., Defendant.**

**No. 89 C 3189.**

United States District Court, N.D. Illinois, E.D.

Nov. 22, 1989.

---

**598**

Richard M. Karr, Elliot B. Pollock, Hardt & Stern, P.C., Chicago, Ill., for plaintiff.

William J. Gibbons, Eric D. Brandfonbrener, Latham & Watkins, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

In a memorandum opinion and order dated Aug. 29, 1989, 720 F.Supp. 1327, the Court dismissed Count II of Henry Knauz's complaint against Toyota Motor Sales, USA, Inc. ("TMS"). The count had been brought under § 4(b) of the Illinois Motor Vehicle Franchise Act ("IMVFA"), Ill.Rev. Stat. ch. 121½, para. 754(b). Although the Court denied Knauz's request to amend Count II, the Court did permit him to bring a new Count III, alleging a violation of IMVFA § 7, Ill.Rev.Stat. ch. 121½, para. 757. TMS moves to dismiss Count III with prejudice, and the Court now grants its motion.

Knauz's complaint alleges that TMS violated the terms of a letter of intent which he had entered into with the manufacturer. The letter of intent (attached to the complaint) required prospective dealers of TMS's Lexus automobile to submit building plans for TMS's approval. Count III contends that after the letter was executed, TMS arbitrarily and unreasonably established "facility guidelines" which "were impossible to fulfill within the confines of the parties' original intent and agreement." Knauz alleges that the guidelines constituted an "unreasonable restriction" requiring compliance with "subjective standards," thus violating IMVFA § 7. He claims standing to bring suit under § 7 as a motor vehicle dealer who had been offered or granted a LEXUS franchise by TMS.

The Court's prior opinion explained that standing to sue under the IMVFA depends upon the plaintiff's status as either a motor vehicle dealer or franchisee. IMVFA § 13, Ill.Rev.Stat. ch. 121½, para. 763. The Court further observed that the substantive causes of action under the IMVFA tie liability to the plaintiff's status; some provisions protect motor vehicle dealers, other provisions protect franchisees, and still others protect both dealers and franchisees. The Court then held that § 4(b) forbids actions taken with respect to existing franchises, and that because the letter of intent did not create an existing franchise, Knauz had no claim under § 4(b).

■ In light of this previous decision, Knauz cannot claim standing as a motor vehicle dealer to enforce IMVFA § 7. Although Knauz sells automobiles, he is not a dealer of the Lexus line. Anything TMS may have done to Knauz was not done to him with respect to his status as a motor vehicle dealer. His only hope for standing under § 7 is as a franchisee.

The Court's previous opinion noted that the IMVFA defines "franchisee" as "a motor vehicle dealer to whom a franchise is offered or granted." IMVFA § 2(k), Ill. Rev.Stat. ch. 121½, para. 752(k). TMS's motion to dismiss Count III puts squarely at issue whether the letter of intent constituted an "offer" of a franchise.

The Court agrees with TMS that the letter of intent does not constitute such an offer. The second sentence of the letter states: "We intend to enter into a Lexus Dealer Agreement with a closely held corporation to be formed by you upon timely compliance with all of the following conditions which we have previously discussed

and agreed upon...." The letter therefore clearly specifies that Knauz was to comply with several conditions before TMS would actually make an offer of a Lexus dealership agreement. *Cf. Bromberg v. Holiday Inns of America,* 388 F.2d 639, 642 (7th Cir.1967) ("By certain and unambiguous language [the letter] was only a proposal on the part of Holiday Inns that it would accept plaintiffs' application for a franchise upon their compliance with the conditions specifically set forth."), *cert. denied,* 391 U.S. 912, 88 S.Ct. 1804, 20 L.Ed.2d 652 (1968).

Furthermore, the letter makes plain that the dealership agreement was not to be with Knauz himself, but rather with a close corporation "to be formed" by Knauz. This close corporation, moreover, would not be Knauz's mere alter ego; instead, twenty-five percent of it was to be owned Jim Larson, who would become general manager of the dealership. Knauz was not even contemplated as a legal party to a dealership agreement.

Finally, the letter does not spell out the terms of the proposed franchise agreement. To constitute an offer, a proposal "must contain all the terms of the contract to be made." *Premier Electric Construction Co. v. Miller–Davis Co.,* 291 F.Supp. 295, 300 (N.D.Ill.1968), *aff'd,* 422 F.2d 1132 (7th Cir.), *cert. denied,* 400 U.S. 828, 91 S.Ct. 56, 27 L.Ed.2d 58 (1970). The letter of intent contains none of the material terms of the Lexus franchise agreement. Consequently, it could not be an offer of a franchise.

Rather than respond in detail to TMS's arguments, Knauz misstates this Court's prior holding. Knauz claims that "the Court specifically states on page 9 of its Memorandum Opinion that Plaintiff would have standing under [IMVFA § 7]." Memorandum in Response, at 1. He then states that "[p]laintiff does not feel any more detailed response is necessary unless the Court indicates that it will reconsider its prior rulings of law." *Id.* at 3.

In fact, there is nothing for the Court to reconsider. The Court's prior opinion actually reads as follows: "Knauz is a motor vehicle dealer, and (according to his complaint) at least an offeree as well." Memorandum Opinion, at 1330. Appended to this sentence is a footnote, which reads: "TMS argues that Knauz is not even an offeree, but on this motion to dismiss the Court will assume that he is." *Id.* n. 6. The opinion then notes that § 7 prohibits unreasonable restrictions on franchisees as well as on motor vehicle dealers. *Id.* at 1330–31. But it in no way held that Knauz was an offeree of a Lexus franchise or that he otherwise had standing to sue under § 7. Nor can the opinion reasonably be read to have so held, for Knauz's status as an offeree was not an issue at that time. Knauz was not entitled to defer response to TMS's motion to dismiss, and he must bear the consequences of his failure to argue fully against TMS's motion.

■ Knauz does, however, make one argument that must be addressed. He contends that the Court should not view an offer of a franchise under the IMVFA in the contractual sense of the term "offer." He reasons that if the letter of intent bound TMS to offer him a franchise upon his compliance with the letter's conditions, then it was in fact the offer of a franchise.

The IMVFA does not define what it means when it uses the phrase "to whom a franchise is offered" in § 2(k). But statutes are enacted in the context of existing statutory and common law, and the legislature must be understood to have this existing law in mind when enacting new legislation. Because the statute gives no indication that it does not refer to "offer" in the contractual sense, the most natural assumption is that it does.

This assumption also makes sense as a matter of statutory policy. Motor vehicle manufacturers are subject to a number of statutory duties (often vaguely defined) once they offer a franchise to a motor vehicle dealer. These manufacturers should be able to engage in preliminary negotiations with dealers before they are deemed to have brought themselves under the statute's purview. Defining "offer" in terms of contract will help both manufacturers and dealers know when their rela-

**600**

tionships are and are not covered by the IMVFA. Furthermore, it will help courts weed out unmeritorious IMVFA claims at an early stage in litigation, before substantial costs have been incurred in the investigation and defense of unfounded statutory claims.

Accordingly, the Court concludes that Count III cannot stand. It is dismissed with prejudice.