**BRATTLEBORO AUTO SALES, INC.,**
Plaintiff–Appellant,

v.

**SUBARU OF NEW ENGLAND, INC.,**
Defendant–Appellee.

No. 804, Docket 79–7648.

United States Court of Appeals,
Second Circuit.

Argued March 19, 1980.

Decided Oct. 21, 1980.

Thomas F. Heilmann, Burlington, Vt., for plaintiff–appellant.

Robert D. Rachlin, John H. Marshall, South Burlington, Vt., for defendant–appellee.

Walter E. Huizenga, McLean, Va., for amicus curiae Nat. Auto. Dealers Ass'n.

Thomas F. Heilmann, Burlington, Vt., for Vermont Automotive Trade Assn.

Allan R. Rosenberg, Boston, Mass., for amicus curiae New England Subaru Dealers Council, Inc.

Before WATERMAN, MANSFIELD and TIMBERS, Circuit Judges.

WATERMAN, Circuit Judge:

Plaintiff–appellant Brattleboro Auto Sales, Inc. ("BAS") appeals from a judgment entered August 28, 1979 in the United States District Court for the District of Vermont (Coffrin, D. J.), denying BAS's motion for a permanent injunction and entering judgment for the defendant–appellee, Subaru of New England, Inc. ("SNE"). The principal effect of this judgment is to remove any legal barrier to SNE's planned termination of its franchise relationship with BAS.[1] For the reasons set forth below, we affirm the judgment of the District Court.

This lawsuit arises directly from certain business decisions made by BAS, and SNE's response to those decisions. For several years prior to 1978, BAS had operated a new car dealership and had acted as a sales representative for three automobile manufacturers: Saab, Subaru and International Harvester. BAS conducted this business out of its so–called "Old Facility" located in Brattleboro, Vermont. Sometime in 1977, however, economic considerations prompted BAS to begin preparations to move its business to larger, more modern quarters. The move to the so–called "New Facility," located diagonally across the street from the Old Facility, was accomplished in August 1978. To offset the increased overhead expenses involved in the operation of the New Facility, BAS decided to become a dealer representative for three additional lines of new cars: Buick, Pontiac and GMC light trucks.

Prior to the move, BAS consulted with and sought the approval of SNE officials. However, SNE took no action to indicate approval of, or even interest in, BAS's planned expansion. Instead, SNE officials informed BAS that if BAS went through with the planned move and took on the three additional lines of cars, SNE would terminate BAS as an authorized Subaru franchisee.

As indicated, BAS carried out its plans, and SNE followed through on its threat. SNE notified BAS by letter dated August 16, 1978 that it had decided to terminate "for due cause" the existing franchise contract with BAS, the termination to take effect sixty days from receipt of the letter.[2]

---

1. The final franchise agreement between BAS and SNE expired December 31, 1978. However, SNE has agreed not to formally terminate its franchise relationship with BAS until the conclusion of this appeal.

2. Inasmuch as the existing franchise agreement was to expire December 31, 1978, SNE decided prior to trial not to renew, rather than to terminate, that agreement. As the court below observed, this change in SNE's plan of action

In response, BAS filed this action in the court below, on August 29, 1978, seeking injunctive relief to prevent SNE's threatened termination of BAS as an authorized Subaru dealer.

At trial, BAS advanced three reasons for prohibiting SNE's attempt to terminate its franchise relationship with BAS. It alleged that SNE's action violated the federal antitrust laws, the Uniform Commercial Code (UCC) requirement that merchants deal with each other in good faith (Vt.Stat.Ann. tit. 9A, §§ 1–203, 2–103(1)(b)), and the Vermont automobile dealers' "Bill of Rights" (Vt.Stat.Ann. tit. 9, §§ 4071–4082 (Supp. 1979)).

■ First, we fully agree with the amply detailed finding of the court below that BAS's antitrust claims are wholly without merit. To summarize the relevant points briefly, BAS's federal antitrust law claims involved allegations that SNE's refusal to continue the franchise relationship with BAS constituted both an unlawful refusal to deal in violation of the Sherman Act, 15 U.S.C. § 1, and was an example of an alleged SNE policy of exclusive dealing in contravention of the Clayton Act, 15 U.S.C. § 14. However, as the court below noted, at trial BAS failed to present any evidence that SNE's alleged objectionable conduct operated in restraint of trade, had the effect of substantially lessening competition, tended to create a monopoly, or constituted an attempt to monopolize. Of course, BAS's failure to establish that SNE's objectionable conduct was associated with either anticompetitive motives or anticompetitive effects is fatal to BAS's Sherman Act and Clayton Act claims.[3]

■ Similarly, we agree with the district court's disposition of BAS's UCC "good faith" claims. Assuming that Article 2 of the Uniform Commercial Code applies to the franchise agreement between SNE and BAS, the "good faith" requirement imposes on the parties to the agreement an obligation to be honest in fact and to observe the reasonable commercial standards of fair dealing in the trade. Vt.Stat.Ann. tit. 9A, § 2–103(1)(b).

■ As indicated by the court below, BAS did not establish in the context of a distributor's decision not to continue in a franchise relationship with a dealership what the "reasonable commercial standards of fair dealing in the trade" were.[4] Furthermore, SNE's obligation to be "honest in fact" in its dealings with BAS may have required no more than that SNE give BAS adequate notice of SNE's anticipated response to BAS's planned action. However that may be, the standard of conduct required of SNE under the Vermont automobile dealers' "Bill of Rights" would equal (if not exceed) the obligations imposed on SNE pursuant to the "good faith" requirement of the Uniform Commercial Code.

Accordingly, we now address BAS's final claim, the claim that SNE's decision to terminate its franchise relationship with BAS was not supported by the Vermont statuto-

most likely was undertaken as a tactical move to improve its position at trial. We, however, find nothing in the district court's decision to support the assertion BAS argues on appeal that the district court regarded the legal standards governing terminations and non–renewals to be other than identical.

3. Numerous other grounds exist to affirm the district court's dismissal of BAS's antitrust claims, among them being BAS's failure to present sufficient evidence to establish the existence of a relevant market.

4. BAS contends that the prior course of dealing between the parties (*i. e.*, SNE's routine renewals of past franchise agreements with BAS) is a relevant indicator of such "reasonable commer-

cial standards." Such reasoning, of course, ignores the crucial distinction between BAS's past and present operations: representing Subaru and two other non–competing lines of cars, as contrasted with representing Subaru and five other lines of cars, two of which (Buick and Pontiac, each of which had recently introduced so–called "X cars," small, front wheel drive models designed to compete with similar imported cars) compete directly with Subaru. We believe that this distinction is sufficient to render the prior course of dealing between SNE and BAS irrelevant in identifying the "reasonable commercial standards" which should apply in this case.

ry requirement of "due cause."[5] BAS argued (1) that its past performance as a Subaru dealer had been satisfactory; (2) that it had met all SNE's objective standards concerning facility and staff size for Subaru dealerships; and (3) that the "due cause" supporting SNE's action must be grounded in similar "hard" objective data. In response, SNE advanced three factors, each of which it maintained was sufficient to meet the "due cause" requirement for its action: (1) BAS breached the existing franchise contract by moving to the New Facility without SNE's prior approval;[6] (2) the New Facility and its personnel were inadequate to meet Subaru franchise requirements;[7] and (3) BAS could not provide the high quality sales and service SNE expected for the Subaru line if BAS simultaneously was operating five other franchises in the same location.

Finding no relevant legislative history or state court decisions on point to aid in the interpretation of the Vermont automobile dealers' "Bill of Rights," the district court turned to a Vermont Supreme Court decision, *In re Grievance of Brooks*, 135 Vt. 563, 568, 382 A.2d 204, 207 (1977), construing a related "just cause" provision in the context of a collective bargaining agreement, for guidance in determining the meaning of the "due cause" requirement, and to the federal Automobile Dealers' Day in Court Act, 15 U.S.C. § 1222, to determine the allocation of the burden of proof between the parties on the "due cause" issue. On this appeal, BAS maintains that this process resulted in a

misinterpretation of the "due cause" requirement and in a misallocation of the burden of proof between the parties which require that the judgment below be reversed. We disagree.

As to the meaning of the "due cause" requirement, BAS seems to agree with the appropriateness of the *Brooks* standard; that there would be "due cause" for SNE's action if SNE had acted reasonably on the basis of some "substantial shortcoming detrimental" to its interests. However, BAS asserts that the district court should not have considered SNE's testimony relative to SNE's "subjective" or "prospective" beliefs as to BAS's future ability to remain an effective Subaru dealer in support of the existence of "due cause" for SNE's action.

■■ Contrary to BAS's assertions, we find nothing in the relevant statutory language which forbids consideration of "subjective" evidence as part of the "due cause" inquiry. Moreover, in the automobile industry, as in other business endeavors, it is both a legitimate and a necessary course of conduct to take action relative to one's probable future business results as affected by present occurrences. In the present situation, SNE reasonably could have concluded that BAS's sales and service of Subaru cars would suffer as a result of BAS's simultaneous promotion of several lines of directly competing cars, and SNE reasonably could have regarded such a prospect as a "substantial shortcoming detrimental" to its interests, therefore supplying "due cause" to justify its action.

---

5. Vt.Stat.Ann. tit. 9, § 4074(c)(3) (Supp.1979), provides that "The nonrenewal of a franchise or selling agreement, without due cause, shall constitute an unfair termination of such franchise or selling agreement." By Vt.Stat.Ann. tit. 9, § 4073(a), such an unfair termination or cancellation is "declared to be unlawful."

6. SNE conceded that the principal purposes of conditioning a franchisee's move to a new location on SNE's prior approval were to insure that the franchisee's operations were of the type relied on when the franchise agreement was entered, as well as to prevent a dealer from invading another franchisee's territory. Under the circumstances of this case, we agree with the district court's conclusion that this

factor was not relevant to the determination of whether SNE acted with "due cause."

7. The court below found that SNE had gathered the bulk of the evidence supporting the claimed inadequacies of BAS's New Facility and personnel after SNE had firmly decided to end its franchise relationship with BAS. Because the district court felt that SNE's investigation of BAS had been colored by SNE's previously adopted position, the court refused to afford any weight to evidence of BAS's alleged inadequacies developed in SNE's investigation of BAS, an investigation which was conducted after SNE had formally notified BAS of its intention to terminate the franchise relationship.

Concerning the district court's allocation of the burden of proof between the parties on the "due cause" issue, we regard the alleged error to be one of semantics rather than one of substance. Although the district court stated that BAS bore the burden of proving that SNE had acted "without due cause," the court also spelled out in detail what was involved in this task.[8] In light of the district court's explanation, it is apparent that the result below was premised on the conclusion that SNE, by a preponderance of the evidence, had established the existence of "due cause" for its action, and that the allocation of the burden of proof between the parties in no way prejudiced BAS.

Addressing the remaining allegations of error advanced by BAS, we conclude that none is material enough to warrant reversal of the district court's judgment. We find BAS's contentions concerning the trial court's failure to resolve conflicts in the evidence to be either unsupported or irrelevant.[9] Finally, although BAS correctly points out that the district court's opinion mistakenly states that the New Facility and its staff were not twice as large as the Old Facility and its staff, this misconception was no part of the basis for the district court's decision. Clearly, SNE's legitimate concerns regarding BAS's future performance as a Subaru dealer were not assuaged by the knowledge that the size of BAS's work force and facility would increase in direct proportion to the number of additional car manufacturers BAS would represent.[10]

The judgment of the district court is affirmed.

8. In a footnote to its opinion the district court described the effect of its allocation of the burden of proof between the parties as follows:
   [P]laintiff established a prima facie case that defendant lacked due cause by showing that the dealership met all of SNE's objective standards. SNE responded with evidence of other reasons for its termination which BAS did not effectively rebut. Thus plaintiff failed to meet the second level of the burden of proof, its burden of persuasion ... not because it failed to prove a negative, but because it did not respond adequately to defendant's case.

9. The alleged conflicts in the evidence primarily involve varying testimony concerning what transpired at several meetings between officials of BAS and SNE prior to BAS's move to the New Facility. To the extent that these conflicts are germane to the outcome of the case, the district court appears to have credited BAS's version of the events. However, no conflicting evidence exists on the important point that prior to BAS's move to the New Facility SNE knew all the details of BAS's planned expansion, and BAS knew SNE's planned response.

10. Regardless of the district court's misconception of the size of BAS's work force and facility, the court, in light of its decision to afford no weight to the bulk of SNE's evidence concerning the alleged inadequacy of the New Facility and its personnel, was all but compelled to find that, from an objective viewpoint, the New Facility was totally adequate. See note 7 supra.