# DECISIONS

OF THE

## SUPREME JUDICIAL COURT

OF

## MASSACHUSETTS

---

BAHIG F. BISHAY & others[1] *vs.* FOREIGN MOTORS INC., & others;[2] MERCEDES-BENZ OF NORTH AMERICA, third-party defendant (and a companion case[3]).

Suffolk. May 6, 1993. - July 23, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Motor Vehicle*, Dealer. *Trademark. Contract*, Franchise agreement, Assignment. *Consumer Protection Act*, Motor vehicle franchise. *Fraud.*

In an action arising out of the refusal of an automobile manufacturer to approve a certain individual as a transferee of an automobile dealer franchise, where the original franchisee had no cause of action against the manufacturer for wrongful restriction on transfer of the franchise under G. L. c. 93B, there was no basis for the individual to assert such a claim under an assignment of the rights of the franchisee. [10-11]

---

[1]Bishay Corporation and Foreign Motors of Boston, Ltd.

[2]Lutz N. Wallem, Waltraud A. Wallem, and Mercedes-Benz of North America, Inc.

[3]Bahig F. Bishay & others *vs.* MBPA Corp. & another.

In an action asserting breach of contract and of the implied covenant of good faith and fair dealing as well as violation of G. L. c. 93A, in an automobile manufacturer's refusal to approve the transfer of an automobile dealership franchise to a certain individual, the record, which contained a master's findings that the manufacturer had acted reasonably in good faith, and not arbitrarily or unconscionably, did not provide a basis for recovery. [11-12]

In an action asserting a claim of fraud arising from an automobile manufacturer's refusal to transfer a dealership franchise to a certain individual, there was no evidence of material misrepresentation or justifiable reliance to support that claim. [12]

In a civil action the master's findings of fact and conclusions were supported by the record. [12-13]

CIVIL ACTIONS commenced in the Superior Court Department on December 2, 1986, and December 5, 1986, respectively.

The cases were consolidated for trial and were heard by *Barbara J. Rouse*, J., on a master's report.

The Supreme Judicial Court granted a request for direct appellate review.

*Harold Brown* (*Catherine M. Keenan* with him) for the plaintiffs.

*Mark P. Szpak* (*William L. Patton* with him) for Mercedes-Benz of North America, Inc.

*James Moors*, of Virginia, for National Automobile Dealers Association, amicus curiae, submitted a brief.

LYNCH, J. These actions arise out of the refusal of the defendant Mercedes-Benz of North America, Inc. (Mercedes-Benz), to approve the plaintiff Bahig F. Bishay (Bishay) as a transferee of a Mercedes-Benz automobile dealer franchise in Boston. A judge in the Superior Court appointed a special master under Mass. R. Civ. P. 53, as amended, 386 Mass. 1237 (1982), who made findings and rulings on all claims asserted by Bishay. The Superior Court judge adopted the master's report with only slight modification and rejected all claims asserted by Bishay. Final judgments were entered pursuant to Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974),

416 Mass. 1                                                    3

Bishay *v.* Foreign Motors, Inc.; Mercedes-Benz of North America.

and Bishay appealed. We granted his application for direct appellate review, and we now affirm.

The master found the following facts.[4] Mercedes-Benz markets and sells new Mercedes-Benz automobiles through a network of approximately 400 "authorized" or "franchise" automobile dealers throughout the United States.[5] The defendant Foreign Motors Inc. (Foreign Motors) is an automobile dealership located in Boston that has had franchise agreements to sell Mercedes-Benz, Audi, BMW, and Porsche automobiles. The "Car Dealer Agreement" (dealer agreement) between Mercedes-Benz and Foreign Motors is a standard form agreement that outlines the nature and extent of control which Mercedes-Benz has over the activities of its authorized dealers. When an existing authorized dealer seeks to transfer ownership of the dealership to another party, the dealer agreement provides that Mercedes-Benz has the right to approve all transferees. However, under the terms of the dealer agreement and G. L. c. 93B (1990 ed.), Mercedes-Benz may not "unreasonably" refuse to approve a transfer to a new owner.

The dealer agreement contains detailed and specific provisions concerning the use by the dealer of the Mercedes-Benz trademarks. Mercedes-Benz is the exclusive licensee of the following federally registered trademarks, service marks, and trade names: the three-pointed star within a circle; the three-pointed star without a circle, the names "Mercedes-Benz," "Mercedes," and "Benz." The dealer agreement also obligates dealers to cooperate with Mercedes-Benz in preventing acts of trademark infringement or unfair competition with respect to any Mercedes-Benz trademark.[6]

---

[4] We accept the master's subsidiary findings of fact unless they are clearly erroneous, mutually inconsistent, unwarranted by the evidence before the master, or are otherwise tainted by error of law. Mass. R. Civ. P. 53 (h) (1), as amended, 386 Mass. 1237 (1982).

[5] The master found: "Mercedes-Benz regards its network of authorized dealers as an essential element of insuring the success of its business."

[6] The master stated: "I find that the issue of trademark infringement was of great concern to Mercedes-Benz and that over the years Mercedes-Benz has made efforts to identify trademark infringers and stop the infringe-

The plaintiff began operating Bishay Motors in East Walpole in 1976. During the late 1970's, Bishay was dealing in the sale, lease, and service of preowned Mercedes-Benz automobiles.[7] From 1976 to 1984, Bishay repeatedly inquired of Mercedes-Benz whether he could become an authorized dealer. On each occasion, he was told there were no open dealerships in his area.

Sometime in 1980, Mercedes-Benz learned that Bishay was using, without permission, the three-pointed star within a circle trademark on calendars, key rings, business cards, letterheads, checks, and repair orders. Counsel for Mercedes-Benz demanded that Bishay cease and desist from using its trademark. Bishay agreed.[8] Nonetheless, Bishay again engaged in further trademark infringement activities between May, 1981, and October, 1985, that included: using letterhead, business cards, and envelopes which displayed the three-pointed star without a circle; erecting a free-standing sign displaying the name "Mercedes-Benz" together with two small three-pointed stars without a circle; using the name "Mercedes-Benz" on the side of Bishay Motors' building in large, prominent letters visible to the public; using the name "Mercedes-Benz of New England" in "Yellow Pages" advertisements; organizing a corporation, "Mercedes-Benz of New England, Inc."; and using "Mercedes-Benz of New England, Inc.," on lease contracts for Mercedes-Benz vehi-

---

ments." The master also found: "Mercedes-Benz regards the infringing use of its trademarks as a serious matter from a legal as well as a business point of view, that it regards its trademarks as central to the good name and reputation of its business, and that it spends large sums of money and devotes substantial resources to identifying infringements and stopping them."

[7]The master found that Bishay Motors "enjoys an excellent reputation among its customers and that it has not engaged in 'gray market' activity in the sale and lease of Mercedes-Benz vehicles."

[8]The master found that "by the Spring of 1981, Mr. Bishay was fully aware of Mercedes-Benz's strong objection to any unauthorized use of any of its trademarks or colorable imitations thereof. Mr. Bishay knew . . . that Mercedes-Benz regards infringements of its trademarks as a serious matter."

416 Mass. 1                                                5

Bishay v. Foreign Motors, Inc.; Mercedes-Benz of North America.

cles.[9] When contacted by counsel for Mercedes-Benz, Bishay explained that he had included the word "independent" on the Bishay Motors building sign to distinguish his company from authorized dealerships.[10] Bishay asked counsel for Mercedes-Benz to send a letter regarding the alleged violations which Bishay would review with his lawyer. The letter was sent in November, 1985, detailing Mercedes-Benz's position, as well as the applicable law. Bishay gave the letter to counsel, but took no action to check on the status of a response to Mercedes-Benz.[11]

In December, 1985, Bishay began negotiations with Lutz Wallem for the acquisition of Foreign Motors. Wallem executed an asset purchase agreement to sell substantially all the assets of Foreign Motors, including the four automobile franchises, to Bishay. The sale, however, was conditioned on the approval of the four manufacturers.[12] Later, Wallem called Jere Garde, a Mercedes-Benz zone manager, to

---

[9]The master found that these activities "ran afoul of Mercedes-Benz's requests to Mr. Bishay and were contrary to Mercedes-Benz's understanding of what he had agreed to do. I further find that, when discovered, these uses raised in the minds of the Mercedes-Benz's personnel legitimate and understandable concerns about Bishay's reliability and his willingness to comply with their requests." The master also found that "incorporating a company under the name 'Mercedes-Benz of New England, Inc.' and using that name on automobile lease contracts which were given to customers and to a financing bank constituted serious trademark infringements."

[10]As to Bishay's explanation, the master found: "Bishay's reliance on what Mercedes-Benz viewed as a fine point of trademark law, i.e., use of the word 'independent' as a defense, reasonably supported Mercedes-Benz's eventual conclusion that Mr. Bishay was not a person who could be relied upon in a long term relationship to adhere to corporate policies and directives."

[11]The master found Bishay's "failure to follow-up particularly troublesome because, by this time, Bishay had begun discussions with Mr. Wallem to purchase the Foreign Motors dealership. He should have known that an outstanding letter from Mercedes-Benz's trademark counsel raising serious complaints and threatening litigation was inconsistent with trying to convince Mercedes-Benz to enter into a long term dealership relationship."

[12]While the master did not specifically find these facts, he did refer to the agreement beween Bishay and Wallem, and a copy of the agreement is contained in the record.

"sound him out" about the possibility of Bishay becoming an authorized Mercedes-Benz dealer. Garde told Wallem that he was aware of some history of trademark problems but that, to his knowledge, "there was nothing current." Garde then told Wallem to have Bishay proceed with the application and that it would be subject to Mercedes-Benz's review and approval process. Garde, however, had not examined the zone file on Bishay and did not know that Mercedes-Benz had instructed counsel to bring an action against Bishay for the infringements, that counsel had sent a letter detailing Mercedes-Benz's complaints to Bishay, and that Bishay had organized the corporation, Mercedes-Benz of New England, Inc.

Porsche and Audi eventually approved the transfer. BMW's approval never came, since its application was premised in part on the approval of Mercedes-Benz and the other franchises.

During the lengthy application process, Mercedes-Benz remained concerned about the trademark issue, as well as the possibility of confusion between Bishay's "satellite" used car operation and his running of a franchised dealership.[13] In February, 1986, counsel for Mercedes-Benz wrote to counsel for Bishay requesting assurances that Bishay would remedy the existing trademark infringements. Bishay responded in a letter that he had, to his knowledge, complied with the requirements.[14]

In March, 1986, Mercedes-Benz, citing Bishay's continued unauthorized use of its trademark, rejected Bishay as a transferee of the Foreign Motors franchise. Bishay and Wallem executed an "Extension Agreement," extending Bishay's

[13]The master found that, "while the 'satellite' issue and the trademark issue seem unrelated, in the minds of those at Mercedes-Benz, there was a clear relationship between the two. Given the concerns which existed about Bishay's reliability, I find that it was reasonable for Mercedes-Benz to have been concerned about possible confusion between the two businesses."

[14]The master found that, when Bishay wrote the letter, he had not in fact complied with all Mercedes-Benz requests. However, the master also found that, since Bishay had turned the problems over to counsel, he believed in his mind that he had complied.

416 Mass. 1                                                             7

Bishay *v.* Foreign Motors, Inc.; Mercedes-Benz of North America.

right to purchase Foreign Motors while both made several unsuccessful attempts to change Mercedes-Benz's decision. In November, 1987, pursuant to a series of agreements entered into between Wallem and the defendant Herbert G. Chambers, Wallem sold his stock in Foreign Motors to Chambers with the approval of the four franchisors, including Mercedes-Benz. The stock sale, however, remained subject to any contractual rights that Bishay might have.

Bishay then commenced actions against Chambers, Chambers' corporation, MBPA Corp., the Wallems, and Foreign Motors to block the sale. Bishay sought, inter alia, to compel Wallem and Foreign Motors to initiate and actively to pursue litigation to force Mercedes-Benz to accept him. In April, 1988, a judge in the Superior Court, after interpreting the extension agreement, ordered Foreign Motors to cooperate with Bishay in his efforts to obtain the franchise either by negotiation or litigation. The judge also ordered Foreign Motors to assign its claims against Mercedes-Benz to Bishay and his company.

In compliance with the judge's ruling, Foreign Motors sent Mercedes-Benz another formal request to approve Bishay in July, 1988,[15] and Mercedes-Benz requested that Bishay submit an updated application. In August, 1988, a Mercedes-Benz district manager toured Bishay Motors and did not observe any trademark problem. However, due to trademark infringements prior to and after the 1986 rejection, Mercedes-Benz decided that Bishay could not be trusted to follow instructions or company policies and rejected Bishay's application.

In December, 1988, a "Third-Party Complaint" was filed against Mercedes-Benz for its refusal to approve Bishay as a transferee. The complaint asserted claims for violation of G. L. c. 93B, breach of the Foreign Motors dealer agreement with Mercedes-Benz, breach of the covenant of good

---

[15]The master found that Foreign Motors sent the request to approve Bishay to Mercedes-Benz in July, 1986. The Superior Court judge amended the date to July, 1988.

faith and fair dealing, and fraud. The complaint requested an injunction compelling Mercedes-Benz to consent to the transfer of Foreign Motors to Bishay in accordance with Foreign Motors' request of July, 1988, and an award of damages incurred by Foreign Motors as a result of Mercedes-Benz's conduct. Bishay also filed a second amended complaint in his action against the Wallems and Foreign Motors in which he added claims for fraud and violation of G. L. c. 93A (1990 ed.), against Mercedes-Benz.

A Superior Court judge referred the cases to a special master on May 25, 1990, and split the action into the "first phase," all liability claims against Mercedes-Benz, and the "second phase," all other claims. In October, 1990, the master issued his final report. He found that Bishay's "use of the Mercedes-Benz trademarks was not the result of dishonesty or any intent on his part to deceive the public or the personnel at Mercedes-Benz." Nevertheless, however, the master found:

> "Mercedes-Benz's concerns about the extent of Mr. Bishay's infringements, his reliability, and his willingness to follow corporate policies were legitimate and reasonable reactions from a legal as well as a business point of view. . . . Given the importance which I have found Mercedes-Benz attaches to its trademarks and to its dealer network, the company was justified in taking serious action against a very large non-authorized Mercedes-Benz auto business and in not rewarding that business with a franchise."

He then stated: "I find that Mercedes-Benz's concerns about the extent of the infringement activity by Bishay Motors were reasonable, legitimate and justified. . . . I find that Mercedes-Benz's concerns about Mr. Bishay's willingness to follow directives and corporate policies were also reasonable and legitimate."[16] The master also analyzed and distin-

---

[16]Here, the master continued, "Bishay was well aware of Mercedes-Benz's strong reaction to his trademark infringement activity. I find that

416 Mass. 1                                         9

Bishay *v.* Foreign Motors, Inc.; Mercedes-Benz of North America.

guished four cases offered by Bishay on the extent to which Mercedes-Benz had in the past approved as one of its dealers a person known to it to have trademark problems.[17] He then concluded that there was no basis for liability on any claim raised by Bishay against Mercedes-Benz.

The judge, after reviewing the master's findings together with the parties' objections, adopted the master's report with modifications.[18] Final judgment was entered in favor of Mercedes-Benz on all claims. This appeal followed.

Bishay Motors' continued use of the protected star in 1985 on vehicle invoices and the use of the name Mercedes-Benz of New England in telephone advertising in later years to be precisely the type of activity which Mercedes-Benz had asked Mr. Bishay to stop. Further the use of the 'double struck' star on stationery beginning in 1984 was sufficiently close to the Mercedes-Benz star that, for this reason also, I find it a reasonable and legitimate conclusion by Mercedes-Benz that Mr. Bishay would not be a cooperative partner and would be unwilling to follow corporate directives and instructions."

[17]The master stated, "I find that, in at least four cases over the period 1970 to 1987, a person who had had some trademark problem with Mercedes-Benz or who may have improperly used its marks was approved by Mercedes-Benz as an authorized dealer. . . . [T]hey were uncovered by Mercedes-Benz during the discovery process in this case as a result of requests filed by the plaintiff. . . . [T]here may have been additional cases but no evidence was offered as to the specific facts of any such cases."

As to these cases, the master concluded, "I do not find troublesome the fact that Mercedes-Benz may have franchised some persons with whom it had some past trademark problem. . . . Bishay, on whom rested the burden of proof on 'unreasonableness,' introduced no more than four cases after the extensive discovery which took place in this case. Had there been evidence of a greater number of situations which more closely resembled the facts of this case, the result might be different. . . . [A] trademark infringement alone does not necessarily disqualify an applicant. Much depends on the circumstances of each particular case . . . ."

The master also found "one other situation where Mercedes-Benz turned down an applicant on the basis of a trademark problem."

[18]While the master found that the G. L. c. 93B (1990 ed.) claim asserted by Bishay in the name of Foreign Motors was not assignable, the Superior Court judge ruled to the contrary. With regard the standard to apply to Mercedes-Benz's refusal to approve Bishay as a transferee under G. L. c. 93B, both the Superior Court judge and the master rejected Bishay's contention that the "due cause" standard set out in G. L. c. 93B, § 9, controlled. Instead, they agreed that the standard of "reasonableness" set out in G. L. c. 93B, § 4 (3) (*i*), applied. While the master found that Mercedes-Benz's actions were reasonable, he noted that Mercedes-Benz

1. *G. L. c. 93B claims.* Bishay asserts several claims under G. L. c. 93B on behalf of Foreign Motors by virtue of the assignment order. In the action based on the extension agreement by Bishay against Foreign Motors, a Superior Court judge ruled: "Foreign Motors is contractually obligated to assign to Bishay *any claims it may have* against [Mercedes-Benz] relating to [Mercedes-Benz's] refusal to assent to the transfer of its franchise to Bishay" (emphasis added). We hold that, because Foreign Motors did not have a claim against Mercedes-Benz for its refusal to assent to the transfer, Bishay received no actionable claim under the assignment.

The master ruled:

> "A logical reading of the holding in [*Beard Motors, Inc.* v. *Toyota Motor Distrib., Inc.*, 395 Mass. 428 (1985)] is that, if the existing franchisee decides not to sue but instead decides to sell to another buyer, he has no claim under the statute except perhaps to sue for a decrease in value caused by the manufacturer's decision to block the first sale. . . . [C]hapter 93B was intended to deal with those situations where the value of the dealership was destroyed or impaired by a wrongful refusal to approve a buyer. If the manufacturer does not block the franchisee's effort to sell to another party, the objective of the statute seems to have been accomplished. Moreover, if the wrongful refusal to approve a transfer impairs the value of a dealership but the dealer sells to another party who pays a lower price, the existing franchisee appears free to sue under the statute for the difference."

---

did not meet the higher "due cause" standard, if applicable. In contrast, the Superior Court judge ruled: "Because I have found that Mercedes-Benz's reasons for rejecting Bishay were reasonable and legitimate . . . they appear to pass the test of 'good cause.' In any event, because I do not find the 'good cause' standard applicable here, I need not resolve this question."

416 Mass. 1          11

Bishay v. Foreign Motors, Inc.; Mercedes-Benz of North America.

After Mercedes-Benz refused to approve Bishay as a transferee, Foreign Motors was free to sue Mercedes-Benz and to attempt to install Bishay as the dealer. However, it did not. Instead, Wallem transferred the dealership to Chambers with Mercedes-Benz's approval. Although the master found that Foreign Motors' financial condition had worsened by the time of the sale to Chambers, there was no finding or evidence that Mercedes-Benz's refusal previously to approve Bishay had impaired the value of the dealership. Since Mercedes-Benz approved the transfer to Chambers, Foreign Motors had no claim under c. 93B against Mercedes-Benz. Bishay, thus, received no claim by virtue of the assignment that he can assert here.[19]

2. *Breach of contract and implied covenant of good faith and fair dealing.* Bishay asserted, again by reason of the court-ordered assignment, that Mercedes-Benz's refusal to approve Bishay was a breach of Foreign Motors' dealer agreement with Mercedes-Benz and of the covenant of good faith and fair dealing implied in it. The master found that a nonassignability clause in the dealer agreement barred both claims.[20] Bishay contends that the master erred because a right of action for damages for breach of contract may be assigned even though the contract itself is not assignable. Even if we assume this argument is correct, there is no basis for a recovery against Mercedes-Benz under this theory. There were numerous findings warranted by the evidence concerning Mercedes-Benz's "reasonable, legitimate and justified" treatment of the Bishay application. In particular, there were findings that (1) "Mercedes-Benz's reaction to the infringements and its using them as a basis to reject Bishay's application was in good faith"; and (2) "there has

---

[19] Bishay also argues that the master, in making his decision, improperly relied on evidence that was not available to Mercedes-Benz. Since we conclude Bishay does not have a claim under c. 93B, we do not address the issue.

[20] The clause stated: "This Agreement, or any part thereof or interest therein, may not be transferred or assigned."

12 416 Mass. 1

Bishay *v.* Foreign Motors, Inc.; Mercedes-Benz of North America.

been no showing that Mercedes-Benz acted 'arbitrar[ily], in bad faith, or unconscionabl[y].' "[21]

3. *G. L. c. 93A, fraud and misrepresentation claims.* Bishay asserted claims against Mercedes-Benz in his own right under G. L. c. 93A (1990 ed.) and for fraud.[22] Given the findings cited above that Mercedes-Benz's actions in refusing Bishay's application were "reasonable," we hold that Mercedes-Benz could not be liable for "unfair and deceptive" acts under c. 93A. "The court may draw its own inferences from the master's subsidiary findings." Mass. R. Civ. P. 53 (h) (1).

Bishay's fraud and misrepresentation claims fail as well. These claims focus on Garde's December, 1985, telephone conversation with Wallem where Garde, not knowing the status of the Bishay file at Mercedes-Benz, told Wallem "there was nothing current," and to proceed with the application for Bishay. Since Bishay knew the application was in the review process and that there was a trademark infringement problem, the master ruled that Bishay could not have justifiably relied on Garde's, or any of Mercedes-Benz's, actions, and rejected the claim. We agree. See *Nei* v. *Burley*, 388 Mass. 307, 311 (1983) (fraud requires showing that plaintiff relied on material misrepresentation).

4. *Erroneous findings.* Bishay next contends that certain findings of fact made by the master were clearly erroneous. We have reviewed the record and conclude that each was ad-

---

[21]Bishay does not challenge the master's ruling that the fraud claim was not assignable.

[22]The master ruled that "in any chapter 93A case, [*Beard Motors, Inc.* v. *Toyota Motor Distribs., Inc.*, 395 Mass. 428 (1985)], precludes the plaintiff from obtaining the relief available under chapter 93B." Limiting Bishay's G. L. c. 93A claim to possible damages incurred in the application process alone, the master found that Mercedes-Benz was not liable under c. 93A. Bishay argues that the master's interpretation of c. 93A was too restrictive and that he should have considered whether Mercedes-Benz's rejection of Bishay was unfair and deceptive under c. 93A. Because we conclude that Mercedes-Benz's rejection of Bishay did not violate c. 93A, we need not address the issue.

equately supported and that ample support exists for the master's conclusions.

5. *Additional findings.* Bishay contends that the master failed to consider that, despite his discovery requests for information relating to prior infringers who had been approved as dealers, the search undertaken by Mercedes-Benz for responsive information was designed not to reveal such information. Bishay then asks this court to make several additional findings. We decline his request. The master presided over twenty-three days of hearings, during which twenty-seven witnesses testified directly or through depositions. He reviewed in excess of four hundred exhibits and considered all the proposed findings of fact and conclusions of law submitted by the parties. His report, while dismissing all claims against Mercedes-Benz, was not overly critical of Bishay. The judge then conducted her own review of the master's report together with the parties' objections. The judge praised the master's report as "very thoughtful, comprehensive, and well substantiated." We have again reviewed the report, the modifications, and the record, together with the parties' claims on appeal, and conclude the same. The matter has been reviewed effectively and exhaustively. We now lay it to rest.

*Judgments affirmed.*