Greater Lowell Auto Mall, Inc. *v.* Toyota Motor Distributors, Inc.

GREATER LOWELL AUTO MALL, INC. *vs.* TOYOTA MOTOR
DISTRIBUTORS, INC., & others.[1]

No. 92-P-143.

Middlesex. March 10, 1993. - August 31, 1993.

Present: KASS, KAPLAN, & LAURENCE, JJ.

*Consumer Protection Act*, Motor vehicle franchise, Standing. *Motor Vehicle*, Dealer. *Contract*, Franchise agreement. *Practice, Civil*, Standing. *Assignment.*

Discussion of the considerations in making a determination whether, under G. L. c. 93B, § 4(3)(*i*), an automobile manufacturer acted reasonably in withholding consent to assignment or transfer of a dealership by its dealer to another. [250-252]

An automobile manufacturer acted in a commercially reasonable manner, under G. L. c. 93B, § 4(3)(*i*), in declining to consent to an automobile dealership's assignment of its agency to another, where the dealership had a history of failure and there was no showing, on the record of summary judgment proceedings, that the failed business would have succeeded under the management of the transferee. [252]

CIVIL ACTION commenced in the Superior Court Department on November 15, 1989.

The case was heard by *George A. O'Toole, Jr.,* J., on a motion for summary judgment.

*Douglas M. Brooks* for the plaintiff.

*Daniel L. Goldberg* (*William N. Berkowitz* with him) for the defendant.

KASS, J. Stripped of considerable chaff in the appeal, this case reduces to a single decisive question. Did Toyota Motor Distributors, Inc. (Toyota), act in a commercially reasonable

---

[1]Herbert G. Chambers and William R. West were permitted to intervene as defendants given that they were selected by Toyota to be the Toyota dealer for the "open point" in Lowell. They are not involved in the appeal.

fashion, as it was required to do by G. L. c. 93B, § 4(3)(*i*),[2] when it refused consent to the assignment of an automobile dealership by Hallissy Auto Mall, Inc., to Greater Lowell Auto Mall, Inc. (GLAM)? A judge of the Superior Court, who took the case on the defendant Toyota's motion for summary judgment, decided that consent to an assignment of the franchise had been withheld reasonably, and a judgment, from which GLAM appeals, was entered for the defendants. We affirm.

In summary, the undisputed facts developed in the summary judgment contest are as follows. Peter B. Hallissy was the principal (he owned and ran the business) in a Toyota dealership that he operated from 1976 to 1988 on Rogers Street in Lowell. Early in 1987 he conceived an exalted scheme for an auto mall in which seven dealerships[3] would operate under one roof. The locale he had selected was 333 Main Street, Tewksbury. Hallissy applied to Toyota for permission to relocate his Toyota dealership and to assign it to Hallissy Auto Mall, Inc., which had been organized to operate the multiple dealerships project. The right to approve a change in location of, as well as a transfer of interest in, a dealership was reserved by Toyota in its dealership agreement.

Toyota was less than lukewarm to Hallissy's proposition. As matter of policy it tended to disapprove the practice of "dualing," a trade term of art for operating more than one dealership in a building. Its experience, Toyota explained, had been that freestanding dealerships concentrated better on the customer, provided better service, and achieved better over-all customer satisfaction. It was doubtful, Toyota wrote to Hallissy, that the mall could be consistent with "one of the basic philosophies of Toyota, the 'Toyota Touch.'" To make

---

[2]The pertinent provision is the last sentence of G. L. c. 93B, § 4(3)(*i*), as amended by St. 1977, c. 717, § 3. It reads as follows: "There shall be no assignment, delegation or transfer of the franchise or management or control thereunder without the written consent of the manufacturer, distributor or wholesaler, which consent will not unreasonably be withheld."

[3]In addition to Toyota: Chevrolet, Subaru, Volvo, Dodge, Lincoln-Mercury, and Sterling.

matters worse, so far as Toyota was concerned, the mall plan would cause congestion "which will negatively impact Toyota customer satisfaction." Toyota sent Hallissy a letter of rejection to which he responded with a combination of pleading and pointed references to consultation with his lawyer. In the event, Toyota reversed itself and gave permission for the transfer, albeit "with reluctance due to the continuing concern for the level of customer satisfaction possible from a multi-line 'auto mall' operation."

The Tewksbury auto mall enterprise was a smashing failure. On Toyota's consumer satisfaction index, the dealership in the Tewksbury mall rated among the lowest in the country. Whatever inherent operational problems the mall posed were much exacerbated by the deterioration of Hallissy's health, management capacity, and financial strength — in that order. By September, 1989, the dealership was often untended on Saturdays, ran no advertising, could not buy new models, and its financial fate had fallen into the hands of General Motors Acceptance Corporation, a company related to competitors of Toyota. Hallissy began to look for a buyer to take him out and came up with William P. DeLuca, Jr., and his son William P. DeLuca, III. They organized GLAM to acquire and run the auto mall.

Two meetings took place between the DeLucas and Toyota. The DeLucas undertook to explain why they could succeed in making the mall work for Toyota and the other dealers. Toyota was not convinced and declined to give its consent. In the meantime, Toyota had terminated the Hallissy dealership agreement for multiple failures of performance by Hallissy of the dealer's obligations. The notice of termination was a fifteen-day notice, which, under G. L. c. 93B, § 4(3)(e)(1), was useable only in the event the dealer abandoned or closed the dealership; for other violations of the dealership agreement, the statute requires a sixty-day notice. The judge ruled that on the undisputed facts Hallissy had neither closed nor abandoned the business. To be sure, the car agency had slipped to an extremely low ebb, but the judge thought, "vain though the effort may have

been, Hallissy was struggling to keep enough of a pulse beating in the dying business that it might be transferred." Accordingly, he ruled that Hallissy had not abandoned his shop. Whether that ruling was correct is now academic because the Hallissy dealership was ultimately extinguished by Toyota's refusal to consent to transfer of the dealership to GLAM.

Although it had not received consent to assign its Toyota dealership to GLAM, Hallissy Auto Mall, Inc., nevertheless in January, 1990, assigned all its interests in the mall to GLAM. Insofar as that assignment included dealerships, it was effective only to the extent the respective manufacturers ultimately gave their consent. Also included in the assignment were its rights to maintain causes of action against Toyota for wrongful cancellation of the dealership and refusal to consent to the assignment to GLAM.

By reason of the purported assignment of the causes of action, GLAM was substituted as a plaintiff against Toyota in an action begun November 15, 1989, by Hallissy and his company. A prospective transferee of rights in an automobile dealership does not have standing to maintain an action under G. L. c. 93B, § 4(3)(*i*), against a manufacturer for unreasonably withholding consent to transfer of a dealership by a dealer to that prospective assignee. *Beard Motors, Inc.* v. *Toyota Motor Distrib., Inc.*, 395 Mass. 428, 433 (1985). See *Bishay* v. *Foreign Motors, Inc.*, 416 Mass. 1, 10-11 (1993). We do not think that the principle established in the *Beard* case can be circumvented by the tail chasing expedient of assigning the existing dealer's rights to the aspiring dealer. Cf. *Bishay* v. *Foreign Motors, Inc.*, *supra*. The point, however, was not discussed by the Superior Court judge, and we prefer, therefore, not to make it the fulcrum for disposition of this case.

We turn, at last, to what we have identified as the dispositive issue, whether Toyota acted reasonably in withholding consent to the assignment Hallissy sought to make to GLAM. In connection with a substantially similar statutory provision, a United States Bankruptcy Court judge identified

as a general test for reasonableness "factors closely related to the proposed assignee's likelihood of successful performance under the franchise agreement." *In re Van Ness Auto Plaza, Inc.*, 120 B.R. 545, 547 (Bankr. N.D. Cal. 1990). Specific relevant considerations would include: (1) the suitability of combining the franchise in question with other franchises at the same location; (2) the location of the proposed dealer; (3) the adequacy of the working capital of the proposed dealer; (4) prior experience with the proposed dealer; (5) prior sales performance of the proposed dealer; (6) whether the proposed dealer has a history of profitable operation; (7) the business acumen of the proposed dealer; and (8) whether the proposed dealer has provided the manufacturer with solid information about its qualifications. *Ibid.*

In *Brattleboro Auto Sales, Inc.* v. *Subaru. of New England, Inc.*, 633 F.2d 649 (2d Cir. 1980), the court held it a suitable reason for terminating a dealership that the dealer in question (BAS) wished to relocate and take on as additional manufacturers Buick, Pontiac, and GMC light trucks (it had been selling Subaru, Saab, and International Harvester). The court said that Subaru "reasonably could have concluded that BAS's sales and service of Subaru cars would suffer as a result of BAS's simultaneous promotion of several lines of directly competing cars." *Id.* at 642. A history of unprofitable operations, low capitalization, and insufficient selling space were cited as reasonable grounds for refusing consent to an assignment of a dealership in *In re Pioneer Ford Sales, Inc.*, 729 F.2d 27, 29-30 (1st Cir. 1984). Unease about "dualing" specifically has been regarded as a commercially reasonable basis for refusing consent to an assignment as contemplated by G. L. c. 93B. *Simonds Chevrolet, Inc.* v. *General Motors Corp.*, 564 F. Supp. 151, 153 (D. Mass. 1983). Most recently in *Bishay* v. *Foreign Motors, Inc.*, 416 Mass. at 8, 9-10 n.18, concerns about respect for the manufacturer's trademark and a history of noncompliance with commitments to the manufacturer were implicitly accepted as valid reason for refusing consent to assignment of an auto-

mobile dealership. See also *Foreign Motors, Inc.* v. *Audi of America, Inc.*, 755 F. Supp. 30, 35 (D. Mass. 1991).

In the instant case, Toyota, having once agreed to try the Tewksbury auto mall with great reluctance, acted reasonably in declining to consent to having another go at it with a different dealer. Given the history of failure, it could resume adherence to its fundamental policy of avoiding dualing and preferring freestanding car agencies. Toyota could also factor into its decision the rickety financial structure that Hallissy had transferred to GLAM. On the basis of the record made for summary judgment purposes, the judge correctly concluded that GLAM could not make a showing that Toyota had acted unreasonably — and hence in violation of G. L. c. 93B — in refusing consent to assignment of the Hallissy agency to GLAM.

*Judgment affirmed.*