HERITAGE JEEP-EAGLE, INC. *vs.* CHRYSLER CORPORATION
& others[1]
(and a companion case.)[2]

Nos. 93-P-1353 & 94-P-138.

Middlesex. December 9, 1994. - September 22, 1995.

Present: PERRETTA, DREBEN, & GREENBERG, JJ.

*Motor Vehicle*, Franchise, Dealer. *Contract*, Franchise agreement. *Statute*, Construction. *Words*, "Additional."

The scope of the prohibitions of G. L. c. 93B, § 4 (3) (*l*), encompasses an automobile manufacturer's consent to the relocation of a dealership to a site claimed by other dealers of the "same line make" to be their relevant market area, and the provisions of § 4 (3) (*i*) of that statute (prohibiting manufacturers from unreasonably withholding consent to the transfer of a franchise) were not contradictory or inconsistent: Superior Court judges erred in dismissing complaints of such other dealers seeking determinations whether a proposed relocation of a franchise violated the statute. [257-263]

CIVIL ACTIONS commenced in the Superior Court Department on May 25, 1993, and May 27, 1993.

The cases were heard by *Elizabeth Butler*, J., and *R. Malcolm Graham*, J., respectively, on motions to dismiss.

*Frank C. Corso* (*Camille F. Sarrouf* with him) for Heritage Jeep-Eagle, Inc.

*Peter J. Arvanites* for Courtesy Jeep-Eagle, Inc.

*Robert D. Cultice* for Chrysler Corporation.

*J. Owen Todd* for Lawless Chrysler-Plymouth Corporation.

The following submitted briefs for amici curiae:

---

[1]Lawless Chrysler-Plymouth Corporation and Lynngate Motors.

[2]Courtesy Jeep-Eagle, Inc. *vs.* Chrysler Corporation, Lawless Chrysler-Plymouth Corporation, and Lynngate Motors.

*Allan R. Curhan, Benjamin W. Moulton & Gail Eagan* for Massachusetts State Automobile Dealers Association, Inc.

*James J. McNulty* for National Automobile Dealers Association.

*Daniel L. Goldberg & William N. Berkowitz* for American Automobile Manufacturers Association & another.

PERRETTA, J. General Laws c. 93B, § 4(3) (*l*), as amended by St. 1977, c. 717, § 3, makes it unlawful for a motor vehicle manufacturer or distributor "arbitrarily and without notice to existing franchisees" to grant a franchise to an additional franchisee who would conduct his dealership "from a place of business situated within the relevant market area of an existing franchisee or franchisees." This appeal brings before us the question whether a manufacturer's approval of the sale of a Jeep-Eagle automobile dealership and its relocation by the buyer to a site that two existing franchisees claim to be in their relevant market area can constitute a violation of the statute. Concluding that such an allegation is a claim upon which relief could be granted, we reverse the judgments of dismissal entered pursuant to Mass.R.Civ.P. 12(b) (6), 365 Mass. 755 (1974).

1. *The claim.* We recite the facts alleged in the complaints of the plaintiffs, who are entitled to all favorable inferences. See *General Motors Acceptance Corp.* v. *Abington Cas. Ins. Co.*, 413 Mass. 583, 584 (1992). Lynngate Motors (Lynngate), a Jeep-Eagle dealership doing business in Lynn, requested permission of Chrysler Corporation to transfer its Jeep-Eagle franchise to Lawless Chrysler-Plymouth Corporation (Lawless), situated in Woburn, with the intent that the franchise business thereafter be located in Woburn. Chrysler consented to the transfer and relocation and gave notice of the transaction to Heritage Jeep-Eagle, Inc. (Heritage), and Courtesy Jeep-Eagle, Inc. (Courtesy), located in Belmont and Lynnfield, respectively. Shortly after receiving notice from Chrysler, Heritage and Courtesy brought the present complaints seeking to enjoin the relocation of Lynngate's Jeep-Eagle business by Lawless from Lynn to Woburn on the

claimed basis that the relocation was an arbitrary encroach-
ment upon their relevant market areas and, therefore, in vio-
lation of G. L. c. 93B, § 4(3) (*l*). When taken with § 3(*a*) of
the same chapter, § 4(3) (*l*), as here relevant, makes it un-
fair for a manufacturer to do the following:

> "arbitrarily and without notice[3] to existing franchisees
> as hereinafter provided, to grant or enter into a fran-
> chise or selling agreement to or with *an additional fran-
> chisee* who intends or would be required by such
> franchise or selling agreement to conduct its dealership
> operations from a place of business situated within the
> relevant market area of an existing franchisee or fran-
> chisees representing the same line make, or whose spe-
> cific area or areas of responsibility encompasses or in-
> cludes all or a substantial portion of the relevant market
> area of such existing franchisee or franchisees regard-
> less of whether such franchise or selling agreement de-
> lineates a specific area of responsibility or recites that
> the area of responsibility of such appointee is to be
> shared or operated in common with others"[4] (emphasis
> supplied).

---

[3]From other provisions of the statute — see § 4(3)(*l*), fourth par. — it
appears that arbitrary action (with or without notice) is sufficient to invoke
the statute; that is, there is no requirement that the action be both arbi-
trary "and" without notice. The parties do not argue otherwise.

[4]The fifth paragraph of subsection (*l*) provides that, as used in
§ 4(3)(*l*),

> "the relevant market area of a motor vehicle dealer with respect to
> any given line make is the more narrowly defined and circumscribed
> geographical area immediately surrounding its existing dealer loca-
> tion within which it obtained, during the period of time the dealer-
> ship business has been operated from said location or the three-year
> period immediately preceding the date of said notice of intent to
> grant or enter into an additional franchise or selling agreement,
> whichever is the lesser, at least two-thirds of (i) its retail sales of
> new motor vehicles of said line make or (ii) its retail service sales,
> regardless of whether its franchise or selling agreement delineates or
> establishes a specific area of responsibility or whether, by customer
> or usage, a specific area of responsibility has been established or an-
> other motor vehicle dealer with a franchise or selling agreement cov-

Subsection (*l*) goes on to provide that the manufacturer must give written notice of its intention to enter into the additional franchise agreement "to each motor vehicle dealer with a franchise or selling agreement covering the same line make within a twenty mile radius of the location where the business of the proposed franchise will be located."[5] The existing franchisee may then, prior to the date of the proposed grant specified in the notice, petition the Superior Court for a determination whether the grant is "arbitrary." The statute lists eight pertinent but noninclusive circumstances for the court to consider in making that determination.[6] See § 4(3) (*l*) (i) through (viii).

In dismissing the actions pursuant to rule 12(b) (6), each of the Superior Court judges concluded that, because the relocation of the Jeep Eagle business from Lynn to Woburn did not result in a net increase in the total number of franchises, Heritage and Courtesy had failed to state a claim upon which relief could be granted under § 4(3) (*l*).

2. *The scope of § 4(3) (l).* There is no express language in § 4(3) (*l*) that directly addresses the issue with which we are presented: whether a manufacturer's consent to the relocation of a dealership to a site claimed by other dealers of the "same line make" to be their relevant market area is within the reach of that statute. Compare Conn. Gen. Stat. § 42-133dd (1995), which expressly provides for procedures simi-

---

ering the same line makes has a place of business in such market area."

See also *Ricky Smith Pontiac, Inc.* v. *Subaru of New England, Inc.*, 14 Mass. App. Ct. 396 (1982).

[5]Based upon the definition of "franchise" set out in G. L. c. 93B, § 1(*i*), and the allegation in both complaints, that Chrysler gave notice of the relocation to Heritage and Courtesy, we think it reasonable to infer that neither Lawless nor Lynngate could move the site of Lynngate's Jeep-Eagle business without a modification of the existing franchise or selling arrangement between Lynngate and Chrysler or, more likely, the execution of a new franchise or selling arrangement between Lawless and Chrysler. See also Brown, Franchising Realities & Remedies, Forms Vol. § 12.02[2] (1994).

[6]Because the Superior Court judges here concluded that the proposed relocation was not within the scope of § 4(3)(*l*), they did not reach the question of arbitrariness.

lar to those set out in § 4(3) (*l*) "[i]n the event that a manu-
facturer . . . seeks to enter into a franchise establishing a
new dealer *or relocating an existing dealer* within or into a
relevant market area where the same line make is then repre-
sented . . ." (emphasis supplied).

"It is a well-established canon of construction that, where
the statutory language is clear, the courts must impart to the
language its plain and ordinary meaning. *Nationwide Mut.
Ins. Co.* v. *Commissioner of Insurance*, 397 Mass. 416, 420
(1986), and cases cited. The plain and ordinary meaning is
conclusive as to legislative intent in the absence of any con-
trary evidence such as the statute's history and purpose.
*Sterilite Corp.* v. *Continental Cas. Co.*, 397 Mass. 837, 839
(1986), and cases cited. While courts should look to diction-
ary definitions and accepted meanings in other legal contexts,
see *Oxford* v. *Oxford Water Co.*, 391 Mass. 581, 587 (1984),
their interpretations must remain faithful to the purpose and
construction of the statute as a whole. See *Commissioner of
Revenue* v. *Wells Yachts South, Inc.*, 406 Mass. 661, 664
(1990)." *Commonwealth* v. *One 1987 Mercury Cougar
Auto.*, 413 Mass. 534, 537-538 (1992).

As noted by the Superior Court judge in dismissing Heri-
tage's complaint, the word "additional," according to Web-
ster's Third New Intl. Dictionary 24 (1966), has the ordinary
meanings of "added," "increased," or "augmented." Cour-
tesy's complaint was dismissed on the same, but abbreviated,
basis: "Transfer in this case does not constitute an 'addi-
tional franchise' under c. 93B."[7] As we read the statute,

_____

[7]The United States District Court for the Massachusetts District and a
third Superior Court judge have construed the statute similarly. See York
Oldsmobile, Inc. *vs.* American Isuzu Motors, Inc., No. 93-12748-JLT (D.
Mass. Feb. 18, 1994); *Herb Chambers I-93, Inc.* v. *Mercedes-Benz of
North America*, 911 F. Supp. 34 (D. Mass. 1995); *128 Sales, Inc.* v. *Saab-
Scania of Am., Inc.*, No. 88-5346 (Mass. Super. Ct. Oct. 6, 1988). Al-
though entitled to our respect, these decisions are not binding upon us. See
*Fiorentino* v. *Probate Ct.*, 365 Mass. 13, 14-15 (1974). We decline to fol-
low them for the following reason. In the lead case in this group of deci-
sions, *128 Sales, Inc.* v. *Saab-Scania of America, Inc.*, *supra*, a Superior
Court judge concluded that the relocation of a dealership from one site to
another, *both* of which appear to have been within the same relevant mar-

however, the word "additional" cannot be read to mean a net increase in the total number of franchisees without reference to a relationship between the increase in number and a defined area. Without such a qualifying reference, the very intent of the statute would be defeated by its reach.

We look to the purpose of § 4(3) (*l*). Because of the limited relief available to automobile dealers under 15 U.S.C. §§ 1221-1225 (1994), the so-called "Dealers' Day in Court Act," dealers turned to the States for remedial legislation in respect to the establishment of new dealerships and the relocation of existing ones. "There are now specific laws in thirty-seven states restricting the establishment of new motor vehicle dealers in the vicinity of an existing dealer holding a franchise for the 'same line make' or product line. These laws, passed since 1963, are referred to as 'relevant market area (RMA) laws' or 'additional dealer laws.'" ABA Antitrust Section: Monograph No. 17, Franchise Protection: Laws Against Termination and the Establishment of Additional Franchises, at 89 (1990) (footnote omitted).

These "RMA" or "additional dealer" laws are intended "to protect the franchisees from destructive intrabrand competition and the unequal economic power of manufacturers." *Id.* at 90. See also *New Motor Vehicle Bd. of Cal.* v. *Orrin W. Fox Co.*, 439 U.S. 96, 100-102 (1978); *Tober Foreign Motors, Inc.* v. *Reiter Oldsmobile, Inc.*, 376 Mass. 313, 320 (1978); *Monmouth Chrysler-Plymouth, Inc.* v. *Chrysler Corp.*, 102 N.J. 485, 498-499 (1986). Such is the intent of § 4(3) (*l*). See *Ricky Smith Pontiac, Inc.* v. *Subaru of New England, Inc.*, 14 Mass. App. Ct. 396, 402 (1982).

Whether the number of franchises in any given relevant market area is augmented by the creation of a new franchise or by the relocation of an existing one, the result is the same.

___

ket area of the complaining franchisee, resulted in no net increase in the number of franchises and, therefore, was not an additional franchise within the meaning of § 4(3)(*l*). That decision has thereafter been read to mean that the statute is inapplicable to franchise relocations, and it appears to have been followed without consideration of the issue before us, that is, whether the statute applies where a franchise is relocated to the relevant market area of another franchisee of the same line make.

In either event, there is additional intrabrand competition in what same line make dealers claim to be their relevant market area. We conclude that § 4(3) (*l*) directs itself to the granting of a franchise or selling arrangement that will add a dealer of the same line make to those already existing in the relevant market area.[8]

In claiming that § 4(3) (*l*) is inapplicable to relocations, the defendants rely heavily upon § 4(3) (*i*), which they read as prohibiting manufacturers from unreasonably withholding consent to a dealer's request to transfer a franchise. More specifically, § 4(3) (*i*), as amended by St. 1977, c. 717, § 3, declares it unlawful:

> "to impose upon any motor vehicle dealer or any director, officer, partner or stockholder thereof or any other person holding or otherwise owning an interest therein, by or through the terms and provisions of a franchise, selling agreement, or otherwise, unreasonable restrictions upon the financial arrangement or structure of any such dealership, the method and manner by which such dealership finances or intends to finance its operation, equipment and facilities or the right of any individual, proprietor or stockholder to use, sell, transfer or otherwise dispose of, mortgage, pledge or hypothecate any interest in such dealership or to enter into and implement testamentary arrangement with respect thereto. A manufacturer . . . may require that any director, officer, partner or stockholder of a motor vehicle dealer, or any other person holding or otherwise owning an interest therein be identified as such and may establish reasonable standards concerning the capital needed for dealership operations and concerning continuity of dealership management. *There shall be no assignment, delegation*

---

[8]Further support for this conclusion can be found in the statute's proviso that the "appointment of a successor motor vehicle dealer at the same location as its predecessor or within a two-mile radius therefrom within one year from the date on which its predecessor ceased operations or was terminated . . . *shall not* be construed as a grant or entering into of an additional franchise or selling agreement" (emphasis supplied).

*or transfer of the franchise or management or control thereunder without the written consent of the manufacturer, distributor or wholesaler, which consent will not unreasonably be withheld"* (emphasis supplied).[9]

It is the defendants' argument that to construe "additional franchise" to include the relocation of a franchise into an existing franchisee's relevant market area is to put the statute in conflict with itself, that is, § 4(3) (*i*) mandates that consent to the transfer not be unreasonably withheld while allowing liability to arise under § 4(3) (*l*) on account of that consent. The defendants reason that, because the Legislature could not have intended to contradict itself by imposing liability for both refusing and giving consent to the transfer of the franchise, § 4(3) (*l*) cannot be read to include relocations. We conclude that § 4 (3) (*i*) and § 4(3) (*l*) speak to different transactions and are not contradictory.

Whether Chrysler reasonably consented to Lynngate's request to sell or transfer its franchise to Lawless is a matter of interest to those three parties and of no legal concern of the plaintiffs. See *Beard Motors, Inc.* v. *Toyota Motor Distrib., Inc.*, 395 Mass. 428, 433 (1985); *Bishay* v. *Foreign Motors, Inc.*, 416 Mass. 1, 10-11 (1993); *Greater Lowell Auto Mall, Inc.* v. *Toyota Motor Distrib., Inc.*, 35 Mass. App. Ct. 247, 250-251 (1993). As defined by G. L. c. 93B, § 1(*i*), as inserted by St. 1970, c. 814, § 1, a franchise is "an oral or written arrangement for a definite or indefinite period in which a manufacturer, distributor or wholesaler grants to a motor vehicle dealer a license to use a trade name, service mark, or related characteristic, and in which there is a community of interest in the marketing of motor vehicles or ser-

---

[9]Section 7 of c. 93B, as inserted by St. 1970, c. 814, § 1, in addition to and consistent with § 4(3)(*i*), provides: "It shall be unlawful directly or indirectly to impose unreasonable restrictions on the motor vehicle dealer or franchisee relative to transfer, sale, right to renew, termination, discipline, noncompetition covenants, site-control (whether by sublease, collateral pledge of lease, or otherwise), right of first refusal to purchase, option to purchase, compliance with subjective standards and assertion of legal or equitable rights."

vices related thereto at wholesale, retail, leasing, or otherwise."

Section 4(3) (*i*) was enacted in recognition of the fact that "manufacturers have consistently asserted the right to restrict the dealer's right to sell, transfer or even to capitalize his dealership, and in any event the Big Three have persistently refused to permit a dealer to sell his dealership at any price which exceeds the net value of its *tangible assets*" (footnote omitted; emphasis in original). Brown, A Bill of Rights for Auto Dealers, 12 B.C. Indus. & Com. L. Rev. 757, 768 (1971). See *Beard Motors, Inc.* v. *Toyota Motor Distrib., Inc.*, 395 Mass. at 433, quoting from Brown, *supra* at 803, that "[s]everal provisions of G. L. c. 93B, including § 4(3) (*i*), recognize and protect 'the dealer's equity in his business as his independent asset, alienable at market value, while simultaneously preserving reasonable prerogatives for the manufacturers.'" Those factors to be considered in deciding whether a request to transfer a franchise was acted upon reasonably have been described as "'factors closely related to the proposed assignee's likelihood of successful performance under the franchise agreement.' *In re Van Ness Auto Plaza, Inc.*, 120 B.R. 545, 547 (Bankr. N.D. Cal. 1990)." *Greater Lowell Auto Mall, Inc.* v. *Toyota Motor Distrib., Inc.*, 35 Mass. App. Ct. at 251. Although there may be some overlap between those factors and the circumstances to be considered in determining whether the proposed granting of an additional franchise in another franchisee's relevant market area is arbitrary, see § 4(3) (*l*) (i) through (viii), the focus of the latter is upon the degree of competition among the franchisees and not, as with the former, upon the performance history of a particular proposed transferee.

Once Chrysler consented to Lynngate's request to transfer its franchise to Lawless, it was no longer exposed to potential liability under § 4(3) (*i*). Had Lawless chosen to maintain the franchise business at its original location in Lynn, the matter would have ended. It was not until Lawless, either directly or through Lynngate, sought to relocate that business to Woburn that § 4(3) (*l*) came into play. The fact that

the requests for consent to transfer the franchise and to relocate the business might have been made simultaneously does not merge the two separate transactions into a single, "no-win" situation.

We conclude that, because Chrysler intends to grant or enter into a franchise agreement that will introduce an additional same line make dealer in what the plaintiffs claim to be their relevant market area, it was error to dismiss their complaints seeking determinations of whether the proposed relocation is arbitrary.

Because there must be further proceedings, we comment briefly on Heritage's argument concerning the dismissal of its claims made under § 4(3) (*d*) and § 4(3) (*m*). We cannot say that it was error to dismiss allegations of wrongdoing by Chrysler to dealers other than Heritage. Although Heritage represented in its memorandum of law in opposition to Chrysler's motion to dismiss that it was prepared to amend its complaint, if necessary, and specifically allege that Heritage itself was informed by Chrysler that its franchise would not be renewed unless it agreed not to object to the placement of additional dealers in its relevant market area, it appears that the complaint was dismissed in its entirety without comment upon the proposed amendment. In light of the serious nature of the allegation outlined in Heritage's memorandum and in view of the procedural posture of the case, Heritage is granted leave to file forthwith on remand a motion to amend count four of its complaint. See Mass.R.Civ.P. 15(a), 365 Mass. 761 (1974).

Accordingly, the judgments are reversed, and the matters are remanded to the Superior Court for further proceedings.

*So ordered.*