BEARD MOTORS, INC. *vs.* TOYOTA MOTOR
DISTRIBUTORS, INC. & another.[1]

Barnstable. January 10, 1985. — July 17, 1985.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & O'CONNOR, JJ.

*Consumer Protection Act,* Motor vehicle franchise, Standing. *Practice,
Civil,* Standing.

A franchised Chevrolet automobile dealership which entered an agreement
to purchase a Toyota motor vehicle dealership, subject to the seller's
obtaining the consent of the Toyota distributor and the Toyota importer
to the assignment of the franchise, lacked standing under G. L. c. 93B,
§ 12A, to bring an action against the distributor and importer which, it
was alleged, unreasonably withheld consent to the transfer of the Toyota
dealership to the prospective purchaser in violation of c. 93B, § 4 (3)
(*i*). [430-434]

CIVIL ACTION commenced in the Superior Court Department
on November 12, 1982.

A question of law was reported to the Appeals Court by
*Elizabeth J. Dolan,* J. The Supreme Judicial Court transferred
the case on its own initiative.

*Allan R. Rosenberg* (*Alexander Whiteside* with him) for the
plaintiff.

*Daniel L. Goldberg* for the defendants.

O'CONNOR, J. In this case, we hold that a prospective pur-
chaser of a motor vehicle dealership does not have standing
under G. L. c. 93B, § 12A (1984 ed.), to bring an action
against a motor vehicle distributor who unreasonably withholds
consent to the transfer of the prospective seller's franchise in
violation of G. L. c. 93B, § 4 (3) (i) (1984 ed.).

---

[1] Toyota Motor Sales U.S.A., Inc.

Beard Motors, Inc. (Beard), is a franchised Chevrolet dealership located in Hyannis. On August 18, 1982, Beard entered into a purchase and sale agreement with Chris Bullock Toyota, Inc. (Bullock Toyota), a franchised Toyota dealership also located in Hyannis. The agreement provided that Beard would purchase all of the assets of Bullock Toyota, and that Bullock Toyota would assign its Toyota franchise to Beard. The agreement also provided that Beard would operate the Toyota dealership from its own location. The agreement was expressly conditioned on Bullock Toyota's obtaining the consent of Toyota Motor Distributors, Inc. (TMD), the Toyota distributor in the New England area, and Toyota Motor Sales, U.S.A., Inc. (TMS), the Toyota importer for the United States, to the assignment of the franchise.[2]

Beard's complaint alleges that TMD initially recommended to TMS that the assignment of the franchise be approved, and that TMS had arranged for installation of telephone service at Beard's location, the implication being that TMS intended to approve the assignment of the franchise. The complaint further alleges that, on October 5, 1982, John Adomonis, the principal officer of Transatlantic Motors, Inc. (Transatlantic), a third motor vehicle dealership in Hyannis, offerred to purchase Bullock Toyota's assets for $50,000 more than the purchase price agreed upon by Bullock Toyota and Beard; that on October 6, 1982, Adomonis informed TMD that he would purchase Bullock Toyota's assets including its building if he obtained a Toyota franchise; and that TMD, Bullock Toyota, or Adomonis conveyed this information to TMS and requested that TMS withhold consent to the assignment of the Toyota franchise to Beard. On October 11, 1982, Toyota informed Beard that it would not approve the transfer of the franchise. Consequently, the sale did not take place.

Beard commenced this action in Superior Court seeking money damages and injunctive relief. Count I of the complaint alleges that Toyota unreasonably withheld its consent to the

---

[2] For convenience, we refer to TMS and TMD collectively as Toyota, except where greater specificity is necessary.

assignment of the franchise in violation of G. L. c. 93B, § 4. Counts II, III, and IV set forth claims against Adomonis, Transatlantic, Bullock Toyota, and Christopher Bullock, the principal officer of Bullock Toyota. Only count I is at issue in this appeal. Toyota filed a motion to dismiss count I on the ground that Beard lacked standing to maintain an action under G. L. c. 93B. After a hearing, a judge of the Superior Court allowed Toyota's motion to dismiss. Although the judge concluded that Beard, as a motor vehicle dealer, had standing to bring the action, she allowed the motion to dismiss because Beard had not alleged that it had sustained or would sustain any loss of money or property as a result of Toyota's actions. Beard then filed a motion to vacate the dismissal and a motion for leave to amend its complaint to allege damages. The judge allowed both motions, and the standing issue was raised anew.

Thereafter, the judge reported the following question to the Appeals Court: "Whether, under Mass. G. L. c. 93B and on the pleadings in this case, the plaintiff Chevrolet dealer, never having been a Toyota dealer, has standing under Mass. G. L. c. 93B to sue the Toyota defendants for allegedly unreasonably withholding consent to the tranfer of a Toyota dealership from a co-defendant Toyota dealer to the plaintiff, allegedly in violation of Mass. G. L. c. 93B, § 4 (3) (i) (1977)." We transferred the case to this court on our own motion.

General Laws c. 93B (St. 1970, c. 814, § 1), is a comprehensive statute covering an array of business practices in the automobile industry. The act declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices." G. L. c. 93B, § 3 (*a*) (1984 ed.). Unfair methods of competition and unfair or deceptive acts are defined in § 4 of the act, which provides in part: "There shall be no assignment, delegation or transfer of the franchise or management or control thereunder without the written consent of the manufacturer, distributor or wholesaler, which consent will not unreasonably be withheld." G. L. c. 93B, § 4 (3) (*i*) (1984 ed.). It is this provision that Beard alleges Toyota violated by refusing to consent to the transfer of Bullock Toyota's franchise.

Beard relies on G. L. c. 93B, § 12A, to support its claim that it has standing to maintain this action against Toyota. That section provides in part: "*Any* franchisee or *motor vehicle dealer* who suffers any loss of money or property, real or personal, as a result of the use or employment by a manufacturer, wholesaler, distributor, distributor branch or division, factory branch or division, wholesale branch or division, or any agent, servant or employee thereof, of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by sections three through eleven, inclusive, . . . *may bring an action* in the superior court for damages and equitable relief, including injunctive relief" (emphasis added). G. L. c. 93B, § 12A (1984 ed.). Beard is a motor vehicle dealer as defined by § 1 (*h*) of the act. Therefore, it argues, under the plain meaning of the statutory language it has standing to bring this action. On the other hand, Toyota argues that § 12A only authorizes suits by motor vehicle dealers who have a contractual relationship with the distributor or manufacturer who commits an unfair act or practice.

We have often recognized that not every party who can claim an injury as a result of violations of a statute or regulation has standing to bring an action thereunder. This is true even when a literal reading of the statute, without regard to the Legislature's purpose in enacting it, would appear to provide a broader grant of standing. See, e.g., *Gallo* v. *Division of Water Pollution Control*, 374 Mass. 278, 283 (1978) (statute authorizing action by "any . . . person interested"); *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston*, 324 Mass. 427, 429 (1949) (statute authorizing action by "any person aggrieved"); *Monroe* v. *Cooper*, 235 Mass. 33, 34-35 (1920) (same). The scope of the grant of authority to bring an action for violation of G. L. c. 93B, § 12A, must be determined with reference to the context and subject matter of the statute. See *Boston Edison Co.* v. *Boston Redevelopment Auth.*, 374 Mass. 37, 44 (1977); *Ayer* v. *Commissioners on Height of Bldgs. in Boston*, 242 Mass. 30, 33 (1922). Whether Beard has standing under § 12A depends upon the intent of the Legislature. To determine the intent of the Legislature, we look to both the

language and purposes of the act. *Gallo* v. *Division of Water Pollution Control, supra* at 284.

Unless the Legislature has clearly indicated that it intends a broader grant of standing, see, e.g., *Fournier* v. *Troianello*, 332 Mass. 636, 639 (1955), we have generally looked to whether the party claiming to have standing has alleged an injury "within the area of concern of the statute or regulatory scheme under which the injurious action has occurred." *Penal Insts. Comm'r for Suffolk County* v. *Commissioner of Correction*, 382 Mass. 527, 532 (1981), quoting *Massachusetts Ass'n of Indep. Ins. Agents & Brokers* v. *Commissioner of Ins.*, 373 Mass. 290, 293 (1977). See also *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston, supra* at 429-430 ("It was no part of the purpose of the zoning regulations to protect business from competition," therefore, a person alleging injury due to an increase in competition is not a "person aggrieved" within the meaning of the statute). An analysis of the provisions of G. L. c. 93B and of the Legislature's apparent objectives in enacting the statute leads to the conclusion that Beard has not alleged injury within the area of concern of the statute.

General Laws c. 93B was enacted in recognition of the potentially oppressive power of automobile manufacturers and distributors in relation to their affiliated dealers. See Report of the Legislative Research Council Relative to Regulation of the Automotive Industry, 1968 Senate Doc. No. 983; Brown, A Bill of Rights for Auto Dealers, 12 B.C. Indus. & Com. L. Rev. 757, 760-776 (1971). "The act cover[s] transactions between dealers and the public, but dwel[ls] especially on the relations among manufacturers, distributors, and dealers (which, however, must in the end also affect consumers). [The act] was a response to long-recognized problems including that of the coercion of dealers by automobile manufacturers through such means as the cutting off or purposeful manipulation of the supply of cars." *Tober Foreign Motors, Inc.* v. *Reiter Oldsmobile, Inc.*, 376 Mass. 313, 319 (1978). Prior to the enactment of G. L. c. 93B, manufacturers and distributors had "virtually complete control over their dealers as a result of their awesome power to terminate or fail to renew a franchise."

Brown, A Bill of Rights for Auto Dealers, *supra* at 801. They consistently restricted the dealer's right to sell, transfer, or capitalize his dealership, and refused to permit a dealer to sell his dealership at any price which exceeded the net value of its tangible assets. *Id.* at 768. Several provisions of G. L. c. 93B, including § 4 (3) (*i*), recognize and protect "the dealer's equity in his business as his independent asset, alienable at market value, while simultaneously preserving reasonable prerogatives for the manufacturers." Brown, A Bill of Rights for Auto Dealers, *supra* at 803. See, e.g., § 4 (3) (*d*) (prohibiting threats to terminate franchise); § 4 (3) (*e*) (prohibiting termination of franchise without good cause); § 7 (prohibiting unreasonable restrictions on dealers as to sale, transfer, termination, etc.). See also *Tober Foreign Motors, Inc., supra* at 320, in which we set out a partial list of practices that automobile manufacturers and distributors had used to oppress their affiliated dealers and that are condemned by G. L. c. 93B.

It is clear from a reading of G. L. c. 93B as a whole that the intention of the Legislature was to protect motor vehicle franchisees and dealers from the type of injury to which they had been susceptible by virtue of the inequality of their bargaining power and that of their affiliated manufacturers and distributors. The injuries alleged by Beard — primarily the loss of anticipated profits from the sale of Toyotas and from capital appreciation in the value of the Toyota dealership, due to its inability to obtain the Toyota franchise — are not injuries within the area of legislative concern that resulted in the enactment of G. L. c. 93B, § 4 (3) (*i*). Beard, therefore, does not have standing under G. L. c. 93B, § 12A.

Our conclusion avoids the anomalous situation that would result if we were to accept Beard's interpretation of the statute. Under Beard's reasoning, a disappointed prospective purchaser of a motor vehicle dealership who could allege any injury would have standing to sue only if it was already a motor vehicle dealer at the time of the sale; a prospective purchaser in any other business would not be protected. We do not think the Legislature intended that illogical result.

Because we conclude that Beard has not alleged an injury within the meaning of G. L. c. 93B, § 12A (1984 ed.), we answer the reported question "no." We remand the case for entry of a judgment of dismissal on count I of the complaint and for further proceedings on the remaining counts in the complaint.

*So ordered.*