Lopez, J.
This action for declaratory judgment and injunctive relief arises from the interpretation and enforcement of a provision in G.L.c. 140, §123, whereby the defendants were caused to lose their Massachusetts state licenses to deal in firearms. The plaintiffs claim such loss of'license is a violation of their equal protection rights (Count One), that the statute is unconstitutionally vague (Count Two), and that the statute violates their due process rights (Count Three). The plaintiffs request a preliminary injunction enjoining the enforcement of G.L.c. 140, §123 until further notice of the court. The defendants oppose the request and move to dismiss the complaint pursuant to Mass.R.Civ.P. 12(b)(6).[3] As discussed infra at p. 3, this motion is now treated as a motion for summary judgment pursuant to Mass.R.Civ.P. 56. The defendants’ motion is GRANTED IN PART and DENIED IN PART.
BACKGROUND
The summary judgment record indicates the following undisputed facts.
In 1998, the Massachusetts state legislature, through the omnibus Gun Control Act (“the Act”), amended the licensing provisions for gun dealers. St. 1998, c. 180 & 358. Chapter 180, section 19 provides in pertinent part that “all licensees shall maintain a permanent place of business that is not a residence or dwelling wherein all transactions described in this section shall be conducted and wherein all records required to be kept under this section shall be so kept.” St. 1998, c. 180, §19, codified at G.L.c. 140, §123 (fifteenth).
On October 29, 1999, defendant Attorney General Thomas Reilly (Reilly) sent a letter to the various chiefs of police in Massachusetts requesting that they review the outstanding gun dealer licenses issued by their respective departments pursuant to G.L.c. 140, §122 (“§122 license”) to ensure that they are in compliance with G.L.c. 140, §123. The letter advised suspension or forfeiture “under the applicable provision of G.L.c. 140, §125.” Pursuant to this letter defendant Massachusetts chiefs of police proceeded to terminate the plaintiffs’ state gun dealer licenses as follows:
Defendant East Longmeadow chief of police Paul D. Erickson (Erickson) terminated the state gun dealer license of plaintiff Clifton T. Graves (Graves). Graves received neither notice nor a hearing prior to the termination of his §122 license. Graves is currently licensed under federal law as a gun dealer. Graves maintained his business in his basement with a separate entrance from the outside and an entrance to his home. His business value including inventory is approximately $100,000.
Defendant Framingham chief of police Brent Larrabee (Larrabee) terminated the state gun dealer license of plaintiff William B. Carnicelli (Carnicelli). Carnicelli received neither notice nor a hearing prior to the termination of his § 122 license. Carnicelli maintains his business in his home. The value, including inventory, of his business is approximately $40,000. On February 23, 2000, Carnicelli was informed by letter from Larrabee that his license was feinstated after an inspection by Lt. Wayne A McCarthy that Carnicelli was then in compliance. Carnicelli also holds a federal gun dealer’s license.
Defendant Sutton chief of police John Hebert (Hebert) revoked the state gun dealer license of plaintiff Anthony P. Martinello (Martinello). Martinello was informed by letter of the decision to revoke his license. Martinello received neither notice nor a hearing prior to the termination of his §122 license. Martinello maintains “a separate place of business in his home.” The value, including inventory, of his business is approximately $50,000. Martinello currently holds a federal gun dealer license.
Defendant Pembroke chief of police Gregory Wright (Wright) notified plaintiff William J. Sullivan (Sullivan) by telephone that he was not in compliance with the new statutory provision and that his state license would not be renewed. Wright did not act further since Sullivan’s license was due to expire. Sullivan did not apply for renewal of his license. Sullivan, through counsel, wrote to defendant DiFava and requested a hearing pursuant to G.L.c. 140, §122 on the decision to not renew his license.[4] Sullivan maintains his business in a former garage attached to his home with a separate entrance from the outside as well as an entrance from his home. His business value including inventory is approximately $50,000. Sullivan holds a federal license to deal in firearms which has not been affected.
Defendant North Andover chief of police Richard M. Stanley (Stanley), attempted to terminate plaintiff Joseph Quinn’s (Quinn) state license. Quinn holds a state license to deal in firearms as a wholesaler and also holds a federal firearms dealer’s license. Quinn remains in business as a wholesaler of firearms. Quinn maintains his business in his home with a separate entrance from the outside and a separate entrance to his home. His business value including inventory is approximately $160,000.
All of the above properties are otherwise in compliance with local zoning requirements.
In no case was a hearing or other opportunity to be heard at any time provided in connection with any license termination or non-renewal.
*186 DISCUSSION
The defendants move to dismiss the complaint against them and in so doing submit various exhibits for the court’s consideration including affidavits from Hebert and Wright and several documents. The plaintiffs have filed no opposition to the motion to dismiss but instead have chosen to rest on their memorandum in support of their motion for preliminary injunction which includes additional exhibits.
A motion to dismiss under Mass.R.Civ.P. 12(b)(6) for failure to state a claim for which relief may be granted may be properly treated as a motion for summary judgment pursuant to Mass.R.Civ.P. 56 where the court has received matters outside of the pleadings. See Stop & Shop Cos., Inc. v. Fisher, 387 Mass. 889, 892 (1983). Both parties have submitted exhibits for consideration by the court on this matter. Further, under the standard for issuing a preliminary injunction, the court must make a determination of the likelihood of success on merits of the complaint and in so doing may consider documents outside of the pleadings. See Packaging Ind. Group, Inc. v. Cheney, 380 Mass. 609, 616-17 (1980). No prejudice to either party would result from a conversion to summary judgment in this case. Cf. Stop & Shop Cos., Inc, 387 Mass, at 892. Accordingly, the defendant’s motion to dismiss is properly treated here as a motion for summary judgment.
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c).
Additionally, although not raised in plaintiffs’ complaint this court also addresses below the relevant issue of standing as raised by the defendants and separately briefed by the parties as requested by the court.
A. Plaintiffs’ Standing to Bring Suit
The court specifically requested that the parties address the issue of the plaintiffs’ standing to bring the current suit. The issue of standing raises two issues, (1) whether the plaintiffs have fulfilled the requirements of standing generally, and (2) whether the current action for declaratory judgment is appropriate for these plaintiffs’ grievances.
An individual’s standing to sue under a statute is premised on his having sustained injury within the area of concern of the statutory or regulatory scheme under which the injurious action has occurred. See Beard Motors, Inc. v. Toyota Motor Distributors, Inc., 395 Mass. 428, 432 (1985), citations omitted. The defendants do not contend that the type of injuries alleged are outside the “area of concern” of chapter 140, however, the facts indicate that some of the parties have not actually been injured. Sullivan has not been injured because although he was told that his §122 license would not be renewed, he did not file for renewal but instead allowed his license to lapse. Since he was not actually turned down for renewal on his license, he has not been injured.[5] Likewise, chief of police Stanley only “attempted to terminate” Quinn’s license which, of course, does not rise to the level of injury. Finally, although Carnicelli’s §122 license was terminated, it was subsequently reinstated which therefore makes his claim moot. These three plaintiffs do not have standing to sue and therefore are dismissed from this case. The only plaintiffs not presenting standing problems and therefore have standing to sue in this case are Graves and Martinello.
The defendants also raise the attendant argument that this court lacks jurisdiction in this case. They argue that the appropriate remedy in this case is judicial review of the police chiefs decision in the nature of certiorari pursuant to G.L.c. 249, §4 and therefore the court has no jurisdiction to hear this case. Massachusetts General Laws chapter 249, section 14, however, provides for judicial review of errors of law at the discretion of the court and the review is confined to the record of the proceeding below. See Murray v. Justices of Second Dist. Court of Eastern Middlesex, 389 Mass. 508 (1983). The problem arises that no record exists for this or any other court to review because no hearing was conducted. Additionally, because the review is at the discretion of the court, the plaintiffs’ case may not be given review and therefore the constitutional claims they raise may not be addressed.
This issue need not be reached because an action for declaratory relief for determination of the constitutionality of the statute is proper under G.L.c. 231 A. See Swartz v. Department of Banking and Ins., 376 Mass. 593, 596-97 (1978) (proceeding for declaratory relief is appropriately brought for construction and constitutionality of statute); Santana v. Registrars of Voters of Worcester, 384 Mass. 487 (1981) (dispute over an official interpretation of statute is justiciable controversy for purposes of declaratory relief). Although the defendants attempt to recast this action as merely one involving the state’s right to termination of a license, in fact the plaintiffs raise legitimate constitutional issues of statutory construction and due process. Accordingly, this case is properly considered by this court under an action for declaratory judgment.
B. Violation of Equal Protection
Massachusetts General Laws Chapter 140, section 121 provides, in pertinent part, that “(t]he provisions of sections 122 to 129D, inclusive, and sections 131, 131A, 131B and 131E shall not apply to . . . (C) manufacturers or wholesalers of firearms, rifles, shotguns or machine guns.” The plaintiffs allege that the distinction between license holders such as themselves and “manufacturers or wholesalers” is “irratio *187 nal” and denies them equal protection of the law as provided by the Fourteenth Amendment to the United States Constitution and the Massachusetts Declaration of Rights. To this end they argue that there is no rational basis for distinguishing between dealers in guns and dealers in other types of goods as long as they are in compliance with local zoning requirements.
The plaintiffs’ constitutional claims revolve around their loss of ability to do business pursuant to the loss of their gun dealer’s license. The right to pursue one’s business is not a fundamental right necessitating strict scrutiny. See Take Five Vending, Ltd. v. Provincetown, 415 Mass. 741, 748 (1993), quoting Commonwealth v. Henry’s Drywall Co., 366 Mass. 539, 542 (1974). Accordingly the statute, G.L.c. 140, §123, is analyzed under the rational basis test, the lowest level of judicial scrutiny with the burden of proof falling on the plaintiffs. See id. Under this analysis, G.L.c. 140, §123 will not be set aside if any set of facts may reasonably justify its enactment.
The plaintiffs admit that the regulatory scheme for the trade in guns generally distinguishes between wholesaler/manufacturers and indeed at least one plaintiff possesses both licenses. To attack the current legislation on that ground makes little common sense in light of the already existing distinction made in the overall regulatory scheme. Further, the equal protection clause in the context of economic legislation limits legislative discretion only to the extent of forbidding arbitrary or irrational classifications. That some dissimilarity of treatment occurs is not reason for this court to substitute its independent judgment for that of the Legislature. See Henry’s Drywall Co., 366 Mass, at 545.
The plaintiffs also argue that the “Commonwealth cannot prove that the sale of firearms by home-based dealers is any more or less dangerous to the public safety than the sale of such items by dealers who operate from a commercial storefront operation.” As set forth above, the law need only be rationally related to the desired outcome. Additionally, that the sale of firearms is no less safe if made from a commercial storefront operation, whether true or not, may well be inconsequential to the constitutionality of the statute. The public at large, and accordingly the legislature, is concerned about the issue of gun theft and illegal gun sales. The ease of regulation, inspection, and oversight justifies the need for G.L.c. 140, §123, and therefore addresses these issues and advances the issue of safety by better accountability. Indeed, the statute specifically provides for the availability of the business records for inspection once a year and for the entry upon the premises without a warrant.[6] Economic and oversight concerns have been the basis for upholding other statutes and ordinances limiting the sale or use of certain items. See Take Five Vending, Ltd., 415 Mass, at 748 (ordinance prohibiting cigarette vending machines); Shell Oil Co. v. Revere, 383 Mass. 682, 689 (1981) (ordinance prohibiting self-service gasoline pumping facilities); Henry’s Drywall Co., Inc., 366 Mass, at 545 (statute prohibiting of the use of stilts by employee but not an independent contractor).
Further, the parties discussed the statutory provision of warrantless search of the gun dealer’s business and the issues attendant with the business being in the plaintiffs homes. Section 123’s mandate that the place of business, the records and the inventoiy be available for yearly inspection would potentially present problems if the business was operated out of the plaintiff s home as our current search and seizure law would be in conflict with this warrantless search provision. Indeed the plaintiffs quote a portion of a letter from Reilly’s office to the Massachusetts House Committee on Ways and Means expressing concern about the logistics of gaining entry and access to the business, its records and inventory, if it exists within the gun dealer’s home. Warrantless searches in the context of gun regulation have been upheld by both the United States Supreme Court and the Massachusetts Supreme Judicial Court, so the removal of the business from the confines of a residence or dwelling would eliminate any potential conflict. See United States v. Biswell, 406 U.S. 311 (1972) (holding a warrantless search of the defendant-gun dealer’s storeroom as part of an inspection authorized under the federal Gun Control Act does not violate defendant’s Fourth Amendment rights); Commonwealth v. Tart, 408, Mass. 249 (1990) (upholding administrative search under Article 14 of Massachusetts Declaration of Rights). This point only reinforces the rational basis for §123’s requirement that the business’ location be “not a residence or dwelling.” Accordingly, the statute does not violate the plaintiffs equal protection rights.
C. Count II: Unconstitutional Vagueness
In Count Two, the plaintiffs challenge the statute on the grounds that the use of the terms “wholesaler” and “manufacturer” are unconstitutionally vague and that the statute offers no objective standards or guidelines for determining who is a wholesaler or manufacturer of firearms. Also alleged, although only by incorporation of prior paragraphs, is that the phrase “that is not a residence or dwelling” is likewise vague.
A claim for vagueness in statutory language is essentially a claim for violation of a person’s due process rights because vagueness prevents fair notice of the conduct proscribed by a statute and fails to limit the possibility of arbitrary and discriminatory enforcement. See Caswell v. Licensing Comm’nfor Brockton, 387 Mass. 864, 873 (1983), citing Papachristou v. Jacksonville, 405 U.S. 156, 162 (1972), and Grayned v. Rockford, 408 U.S. 104, 108-09 & n.4 (1972). Laws which merely regulate business activities do not, however, require the precision of laws relating to First Amendment freedoms or criminal conduct. See Caswell, 387 Mass, at 873. Therefore, the relevant *188 inquiry is whether persons “of common intelligence must necessarily guess at its meaning and differ as to its application.” Smith v. Goguen, 415 U.S. 566, 572 n.8 (1974); see also Broadrick v. Oklahoma, 413 U.S. 601, 608 (1973). As discussed supra, a challenge based on the definition of the terms “wholesaler” and “manufacturer” seems disingenuous in light of the already existing licensing scheme of which the plaintiffs have availed themselves in initially obtaining their licenses. Nothing in the record indicates that the statute has been enforced based on a different definition of the terms wholesaler and manufacturer than the plaintiffs are already familiar with through the licensing scheme. Accordingly, nothing in the record supports a conclusion that the terms as applied under the current statutoiy scheme have become incomprehensible.
Further, the clause “not a residence or dwelling” presents no special challenge. Imprecise terms are routinely delineated by courts on a case-by-case basis. See e.g. Cameron v. Johnson, 390 U.S. 611 (1968) (upholding anti-picketing law which included, but did not define, terms including “obstruct,” “interfere,” and “unreasonably”); Duskin v. Desai, 18 F.Sup.2d 117 (D.Mass. 1998) (“trade or commerce" within the meaning of a claim under Chapter 93A); Hitchcock v. Emergency Lighting & Systems, Inc., 12 Mass.App.Ct. 930 (1981) (“seller” within the meaning of U.C.C. §2-103). The plaintiffs claim that it is unclear whether a room separated from the rest of the living space in a home conforms to the language of the statute. In context, the statute requires “a permanent place of business that is not a residence or dwelling.”[7] The facts before the Court indicate that Graves’s permanent place of business was the basement of his home and that Martinello maintained “a separate place of business in his home.” The facts indicate that a purchaser must go to the plaintiffs home to purchase a gun. Such home is a “residence or dwelling” as the terms are commonly understood. That the transaction occurs in a location within that home designated by the plaintiff as his office or “place of business” does not change the fact that the business is being conducted in his home. A reasonable construction of the statute is that such a “home office” is not consistent with the language of the statute and this appears to be the application by the defendants in this case.[8] While issues of notice may well exist, they are more appropriately raised by the plaintiffs’ due process claim discussed below; the statute is not unconstitutionally vague.
D. Count III; Violation of Due Process
The plaintiffs’ final challenge to G.L.c. 140, §123 is on the grounds that it provides for the loss of license and possible criminal prosecution for violation of the statute without notice or an opportunity to be heard. Section 123 provides, in pertinent part, that “(Licensees found to be in violation of this section shall be subject to the suspension or permanent revocation of such license issued under section 122 and to the provisions of section 128.”[9] Nothing in §123 provides for notice or an opportunity to be heard prior to suspension or permanent revocation a license. The plaintiffs further argue that the vagueness of the phrasing “permanent place of business that is not a residence or dwelling” does not adequately put the plaintiffs on notice that they are in violation of the statute, likewise violating their due process rights.
The defendants respond that the plaintiffs do in fact have relief available. The defendants argue that the Act is not unconstitutional because G.L.c. 140, §125 does contain such provisions.[10] The argument then follows that the plaintiffs’ current remedy is therefore, appellate review of the police chiefs decision. The problem arising with this theory is two-fold; (1) the notice and hearing provision in §125 only specifically references suspension or forfeiture but not the permanent revocation allowed in §123, which was the result in the case of plaintiff Martinello; and (2) § 125 requires notice and a hearing prior to any license deprivation which was not done with these plaintiffs.[11]
The issue before the court is one of statutory construction. Generally, a statute should be afforded a meaning consistent with its plain language if it is clear and unambiguous. See Telesetsky v. Wight, 395 Mass. 868, 872 (1985). If inconsistencies arise, the statute must be viewed in context of legislative intent and the “mischief or imperfection” should be remedied so that the purpose of its framers is given effect. See Commonwealth v. Galvin, 388 Mass. 326, 328 (1983). Accordingly, the court may appropriately look to the entire statutory scheme, inquiring into related sections, to determine the meaning of any offending term or clause. See id. at 329.
The plaintiffs’ claims arise from a 1998 amendment to chapter 140 in the omnibus Gun Control Act. St. 1998, c. 180 & 358. This court, therefore, must necessarily look at the statute both as it existed at the time of the alleged injury to the plaintiffs and prior to the 1998 amendment, to adequately weigh the legislative intent. A review of §123 in its pre-amendment state reveals a densely worded statute containing twelve clauses plus additional text. Clause numbered Tenth provides, “[t]hat this license shall be subject to forfeiture as provided in section one hundred and twenty-five for breach of any of its conditions, and that, if the licensee hereunder is convicted of a violation of any such conditions, this license shall thereupon become void.” In addition, this was the only provision in §123 providing a penalty for violation of the section’s terms. Section 125 provided that officials may “after due notice to the licensee and reasonable opportunity for him to be heard” terminate the licensee’s license by forfeiture or suspension. G.L.c. 140, §125 (emphasis added). The two sections of the statute worked in tandem to regulate and sanction violators of the statute. Section 128, although not *189 specifically incorporated into §123, was applicable thereto by its own terms and provided penalties for certain violations of a fine not exceeding $1000 for a first offense and imprisonment for not more than ten years in a state prison for subsequent violations.
The 1998 amendment added, among other things, additional clauses including the Fifteenth which requires “a permanent place of business that is not a residence or dwelling . . G.L.c. 140, §123 cl. 15 as amended by St. 1998, c. 180 §19. It further subjects violators of §123 to suspension or permanent revocation of licenses issued under §122 and specifically incorporates §128. G.L.c. 140, §123 as amended by St. 1998, c. 180 §21. The additional penalty language, of which the plaintiffs complain, does not, unlike clause Tenth, include a reference to§125. Section 128 remained substantially the same save for a change in the penalties and expanding its coverage to several additional clauses in §123.
Dealing first with the plaintiffs’ concern that §123 implicates §128 and therefore violates their due process rights, their concerns are unfounded. To the extent that a violation of § 123 may result in imprisonment in a state prison pursuant to §128, the plaintiffs would be afforded their due process rights under Massachusetts criminal procedure which provides for indictment of a defendant who is charged with an offense punishable by imprisonment in state prison. Mass.R.Civ.P. 3(b)(1). See also Jones v. Robbins, 74 Mass. 329, 349 (1857) (“punishment in the state prison is an infamous punishment, and cannot be imposed without. .. indictment. . .”). Nothing in §128 makes a civil finding of violation of § 123 and resulting civil sanction (i.e. loss of license) primajacie evidence of a violation which would result in a § 128 penalty. No due process violation exists under this provision.
The lack of specific reference to §125 in the portion of §123 setting forth the penalty of suspension or permanent revocation presents a different problem although one that is not insurmountable.[12] In reviewing §§122 through 125 prior to the 1998 amendment there are provisions for notice and hearing in all situations where licenses are either denied or terminated. See G.L.c. 140, §§122 and 125. Additionally, §§123 and 125 referred specifically to each other; §125 addressed both forfeiture and suspension on “satisfactory proof’ of any violation of conditions for licensure under §122 or any violation of chapter 140,[13] and §123, in clause Tenth, required compliance with §125 when sanctioning violators as described therein. The discrepancy in notice and hearing requirements only arises after the 1998 amendment which resulted in the addition of several pages of densely worded statutory language being added to §123.
It could be argued that the legislature’s inaction on the issue of notice and hearing indicates an intention that there be none available to violators. Legislative inaction, however is not instructive concerning the construction of a statute. See Polaroid Corp. v. Commissioner of Revenue, 393 Mass. 490, 496 (1984); Franklin v. Albert, 381 Mass 611, 615-16 (1980). The court cannot, without great difficulty, imagine that the legislature decided that predeprivation notice and hearing could be dispensed with especially for a sanction such as permanent revocation. A more internally consistent and common sense interpretation is that the notice and hearing provision was inadvertently left out of §123 or the legislature assumed that §125 would, by its own terms, provide for such pre-deprivation safeguards. Indeed, Reilly’s October 29, 1999 letter indicates that his understanding of the statute was that compliance with §125 was required when seeking sanctions for §123 violations.[14]
This Court is likewise drawn back to the basic premise articulated above that a statute is to be construed so as to produce one that furthers the legislative intent. See Galvin, 388 Mass, at 328. The legislative intent here is to regulate the trade of guns and to that end punish those who do not abide by the law. For this Court to rule that the statute as amended does not require due process and accordingly invalidate the statute as unconstitutional is counterproductive and unnecessary. Accordingly, this Court finds that G.L.c. 140, §123, when viewed in the context of the related sections of that chapter and the chapter as it existed prior to the 1998 amendment, does require notice and an opportunity to be heard before any sanction is levied under the statute.
The final due process issue for the plaintiffs in this case is that the record indicates they were not provided with notice and an opportunity to be heard prior to the termination of their licenses issued under G.L.c. 140, §122. This is true despite the fact that the October 29, 1999 letter from Reilly’s office instructed the local chiefs of police or other relevant authority to begin “the process of suspending or forfeiting [violators’ §122 licenses] under the applicable provision of G.L. 140, §125.” The plaintiffs’ due process rights were violated not because of the statute or by Reilly’s enforcement request, but rather, because the chiefs of police in this case failed, in contravention to the dictates of Reilly’s letter, to follow the notice and hearing provisions in §125 prior to terminating the plaintiffs licenses.
II. Preliminary Injunction
Plaintiffs request in their complaint, a permanent injunction enjoining the Attorney General and the other defendants from enforcing G.L.c. 140, §123. Since the court has determined that the statute is not unconstitutional but that it has been applied in an unconstitutional way by the sheriffs in their denial of due process to the plaintiffs, this court now addresses the request for injunction in that context.
In assessing the need for granting injunctive relief, the court must first determine whether the plaintiff will suffer a substantial risk of irreparable harm. See Packaging Industries Group, Inc. v. Cheney, 380 Mass. *190 609, 616-17 (1980). The risk of this harm must then be balanced against any similar risk of irreparable harm to the defendants in light of the plaintiffs likelihood of success on the merits. See id. The moving party must show that it may suffer a loss of rights which cannot be later vindicated without the relief requested. See id. at 616.
As discussed above, chapter 140 does provide for pre-deprivation due process in the form of notice and a reasonable opportunity to be heard. Section 123 is far reaching and provides rigid consequences for a violation. Chiefs of police Erickson and Hebert, the only remaining defendants in this case violated these due process rights by terminating Graves and Martinello’s §122 licenses without providing notice and hearing prior to the terminations. The plaintiffs’ rights cannot be vindicated without the opportunity for due process.
A judge may grant injunctive relief if in her sound discretion the facts of the case compel such action. See Commonwealth v. Adams, 416 Mass. 558, 566 (1993). Such a remedy should be no more intrusive than reasonably necessary to accomplish the legally justified result. See Perez v. BHA, 379 Mass. 703, 730 (1980). The facts in this case support limited injunctive relief as set forth below.
ORDER
For the foregoing reasons, the Court orders that summary judgment is GRANTED for the defendants on Counts I and II. The defendant’s motion as to Count III is DENIED IN PART in that the statute does not violate the plaintiffs constitutional rights under the United States Constitution or the Massachusetts Constitution as enacted but does violate the plaintiffs’ due process rights as applied by the defendant chiefs of police. Accordingly, this court orders that plaintiffs Graves and Martinello’s §122 licenses be reinstated and that the defendant chiefs of police Erickson and Hebert be enjoined from terminating said licenses without due notice and a reasonable opportunity to be heard prior thereto as provided under G.L.c. 140, §125.

 Defendants Reilly, Difava, and Perlov submitted amotion to dismiss in which Wright and Hebert join. Defendants Erickson, Larrabee and Stanley have not responded to this motion.

 Footnote one of plaintiffs’ memorandum of law on the issue of standing indicates that Sullivan was contacted by the Massachusetts State Police, Major Robert Mullen, indicating that Sullivan could schedule a hearing at the convenience of the parties but that no hearing had yet been scheduled. Given that this factual information was not provided to the court in the form of a sworn affidavit or other admissible evidentiary form, such information will not be considered for the purposes of resolving any issues presently before the court.

 Although the letter from Sullivan’s counsel to the chief of police requested a hearing on the non-renewal decision, nothing in the record indicates that such a non-renewal action was actually taken and accordingly the court cannot foresee what could result from such a hearing.

 Both parties address the warrantless search in the context of a reason why the statute seeks to remove the gun dealer activity from the confines of a residence or dwelling. This court need not address this issue as it is not necessary in order to resolve the questions before it in this case.

 Clause Fifteenth provides, “[ t]hat all licensees shall maintain a permanent place of business that is not a residence or dwelling wherein all transactions described in this section shall be conducted and wherein all records required to be kept under this section shall be so kept.” G.L.c. 140, §123, cl. Fifteenth.

 Plaintiffs argue that this interpretation would prohibit gun shops from locating in the commercial portion of a mixed use property, i.e. on the first floor with the floors above occupied as personal residences. The court declines to adopt this far reaching interpretation, seeing a distinction between a separate commercial unit in the same building as residential apartments, and the basement or extra room of one's own home.

 Section 128 provides for a fine of not less than $ 1,000 or more than $10,000, or imprisonment of not less than one year nor more than ten years in a state prison for violation of § 123.

 Although the plaintiffs’ argument seems to address the Act as a whole, the court is focused only on the constitutionality of § 123 and any determination thereon does not bear on the remaining sections of the Act.

 G.L.c. 140, §125 provides in pertinent part: “The officials . . . after due notice to the licensee and reasonable opportunity for him to be heard, may declare his license forfeited, or may suspend his license for such period of time as they deem proper, upon satisfactory proof that he has violated or permitted a violation of any condition thereof or has violated any provision of this chapter . . .” While the defendants take great pains to advocate the position that a pre-deprivation hearing is not required in order for the statute to be constitutionally sound, this court need not reach this issue because it is not relevant in the face of the statutory language. G.L.c. 140, §125.

 G.L.c. 140, §123 provides in pertinent part, “[llicensees found to be in violation of this section shall be subject to suspension or permanent revocation of such license issued under section 122 and to the provisions of section 128.”

 G.L.c. 140, § 125 provides in pertinent part, “the officials authorized to issue a license under section one hundred and twenty-two, after due notice to the licensee and reasonable opportunity for him to be heard, may declare his license forfeited, or may suspend his license . . . upon satisfactory proof that he has violated or permitted a violation of any condition thereof or has violated any provision of this chapter

 Reilly’s letter states, “[t]o the extent that dealers are operating their businesses from a dwelling or residence, the process of suspending or forfeiting that license should begin under the applicable provision of G.L.c. 140, §125.”