**GALLO MOTOR CENTER CORP., Plaintiff**

v.

**MAZDA MOTOR OF AMERICA, INC., Defendant.**

**No. 01–40157–NMG.**

United States District Court, D. Massachusetts.

Nov. 5, 2001.

Richard B. McNamara, Gregory A. Holmes, Wiggin & Nourie, P.A., Manchester, NH, for plaintiff.

John R. Skelton, William F. Benson, Bingham Dana, Boston, MA, for defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

The plaintiff, Gallo Motor Center Corporation ("Gallo"), filed suit in this Court on August 21, 2001 against Mazda Motor of America, Inc. ("Mazda") contesting Mazda's establishment of a new dealership on Route 9 and Walnut Street in Shrewsbury, Massachusetts. The plaintiff argues, *inter alia*, that (1) Mazda's proposed dealer site in Shrewsbury violates M.G.L. c 93B § 4(3)(*l*), (2) the subsidization of the new dealership by Mazda's parent company, Ford Motor Company, constitutes unfair competition, and (3) Mazda's new dealership intentionally interferes with Gallo's prospective contractual relations.

This action is here under federal diversity jurisdiction, i.e. the plaintiff is a Massachusetts corporation and the defendant is a California corporation.

Defendant has filed, pursuant to M.G.L. c. 93B § 4(3)(*l*), a motion for speedy trial requesting a trial date in December, 2001.

## I. *Factual Background*

Gallo, a licensed Mazda franchisee since 1994, currently operates a dealership facility at 70 Gold Star Boulevard in Worcester, Massachusetts. On August 16, 1999, Mazda notified Gallo by certified mail of its intention to establish a new Mazda dealership at the Southwest corner of Route 9 and Walnut Street in Westborough, Massachusetts. Mazda further advised Gallo that it anticipated that the new dealership would begin operation in January, 2000 or some time thereafter. Although it provided Gallo with the correct street address of the proposed Route 9 dealership site, Mazda's notice inaccurately identified the site as being in Westborough rather than in Shrewsbury.

Mazda began construction of the new Route 9 outlet well before 2001, but Gallo contends that it did not become aware of the Shrewsbury Mazda dealership until March, 2001 when one of its employees noticed a sign for the new dealership at the construction site. On June 21, 2001, Gallo sent a letter to Mazda challenging both Mazda's establishment of the Route 9 dealership and its failure to provide Gallo with adequate notice. Gallo subsequently filed suit in this Court.

Mazda has continued to build out the Route 9 site, and the proposed dealership is near completion. Mazda is in the final stages of approving the application of the dealer candidate whom it has selected to operate the site and receive support from Ford Motor Company's dealer development program.

## II. *Discussion*

### A. Applicable Law

#### 1. Regulation of Automobile Business Practices Under Chapter 93B

Chapter 93B is a sweeping statute addressing a broad array of unfair methods

of competition in the automobile industry. Under one significant provision of the statute, § 4(3)(*l* ), the legislature sought to eliminate coercive or unfair industry practices by restricting manufacturers' ability to open new franchises in territory already served by dealers. That provision provides in relevant part:

> Prior to the date set forth in said notice on or after which such franchise or selling agreement will be granted or entered into, *any motor vehicle dealer* with a franchise or selling agreement covering the same line [or] make as that offered to the proposed franchisee may, if such proposed franchisee intends to conduct or otherwise operate its business from any place or places within the relevant market area of such motor vehicle dealer..., *petition the superior court* to determine whether such appointment or proposed appointment is arbitrary.... *Such petition shall be entitled to a speedy trial.*

M.G.L. c. 93B § 4(3)(*l* ) (emphasis added).

The provisions of that Section specify that a motor vehicle dealer, rather than the manufacturer or distributor, may petition the court to contest the establishment of a new franchise within its relevant market area.[1] The statute further provides that the dealer's petition is entitled to a speedy disposition. Massachusetts courts have noted that M.G.L. c. 93B § 4(3)(*l* ) is the exclusive remedy for dealers seeking to challenge the establishment of a new dealership within that Chapter. *American Honda Motor Co. v. Bernardi's Inc.*, 432 Mass. 425, 735 N.E.2d 348, 350 (2000).

Although the statute primarily provides relief for dealers, a plain reading of it does not clarify whether a manufacturer, as well as a dealer, may petition for a speedy trial.

At most, the statute does not unambiguously prohibit manufacturers from seeking a speedy trial.

### 2. Statutory Interpretation of M.G.L.c. 93B § 4

Other provisions within Section 4 help to illuminate whether a manufacturer has a right to a speedy trial. For example, Subsection 4(*e* ) authorizes "either party" to petition the court to contest the termination of a franchise, and further provides that "such petition shall be entitled to a speedy trial." The language of M.G.L. c. 93B § 4(*e* ) leaves little doubt that the legislature conferred upon both parties, with respect to that provision, the power to petition the court for a speedy trial.

■ It is an established canon of statutory construction that meaning of a statute will depend on its context or its association with other words therein. *Sweet Home Chapter of Communities for a Great Oregon v. Babbitt*, 1 F.3d 1, 10 (D.C.Cir.1993). *Expressio unius est exclusio alterius* literally means that to include one thing implies the exclusion of the alternative. *Black's Law Dictionary*, 304 (Pocket Ed.1996). In the present case, because M.G.L. c. 93B § 4 specifically authorizes only dealers to petition the court for a speedy trial in one section while a parallel section authorizes "either party" to seek such relief, the Court concludes that the legislature intended the former section to be limited to dealers.

### 3. The Legislative Purposes Behind 93B § 4

■ Another fundamental principle of statutory construction is that statutes should be construed to be consistent with legislative intent if at all possible. *See,*

---

1. Chapter 93B defines relevant market area to be the lesser of at least two-thirds of (i) a dealer's retail sales of new motor vehicles of said line make or (ii) a dealer's retail service sales.

*e.g., Eli Lilly & Co. v. Medtronic, Inc.*, 496 U.S. 661, 669–74, 110 S.Ct. 2683, 110 L.Ed.2d 605 (1990). In the present case, the legislature's overarching purpose in enacting Chapter 93B was to protect dealers "against what it could conceive to be the inequitable consequences of overweening economic power wielded by manufacturers." *Tober Foreign Motors, Inc. v. Reiter Oldsmobile, Inc.*, 376 Mass. 313, 381 N.E.2d 908, 913 (1978). The Act is thus a measure that principally protects dealers.

At the same time, M.G.L. c. 93B preserves the basic rights of manufacturers. *Beard Motors, Inc. v. Toyota Motor Distributors, Inc.*, 395 Mass. 428, 433, 480 N.E.2d 303, 306 (1985). The statute promotes fairness and efficiency by ensuring that interested manufacturers and dealers can dispel any uncertainty about their respective rights and duties. In particular, 4(3)($l$) provides manufacturers and dealers with the opportunity to determine whether a proposed dealership will unfairly encroach upon an existing dealer's territory before either party invests significant financial resources and the "damage is done". *Richard Lundgren, Inc. v. American Honda Motor Co., Inc.*, 45 Mass.App. Ct. 410, 699 N.E.2d 11, 14 (Mass.1998), *review denied* 428 Mass. 1107, 705 N.E.2d 278 (1998).

### a. Mazda's Rights Under Chapter 93B

In the present case, Mazda has already expended considerable capital on its new Route 9 dealership. By its admission, it has almost completed construction of the site and has thus already incurred most of the cost of establishing a new Mazda outlet.

Mazda will, nevertheless, be able to mitigate its losses if this Court determines its rights before the Route 9 dealership commences business. Mazda alleges that, in order to avoid a damages claim under Chapter 93B, it has not yet opened the new Route 9 dealership. In the interim, the dealer candidate, Tony March ("March") cannot open his business without risk of forced closure hereafter. Admittedly, March's economic losses as a prospective dealer are not within the scope of § 4(3)($l$), but Mazda may nonetheless incur ongoing costs for the maintenance of the new facility or lose interest on its capital/investment. *Beard Motors*, 480 N.E.2d at 306 (holding that a would-be motor vehicle franchisee's damages are not "injuries within the area of legislative concern...of [Chapter] 93B...."). Mazda may also lose an opportunity to capture greater market share in Central Massachusetts if Gallo is indeed not adequately serving the greater Worcester/ Shrewsbury area.

### b. Gallo's Rights Under Chapter 93B

Gallo contends that a speedy trial would provide Mazda with an unfair advantage because Mazda, in its capacity as franchisor, is thoroughly familiar with both Gallo's operations and the market for Mazda cars generally. Gallo is also concerned that the instant case presents complex factual issues requiring a longer discovery period than that sought by Mazda.

Although this Court recognizes that this lawsuit will require expert testimony and a careful analysis of a substantial amount of information, Mazda, as Gallo admits, is already in possession of most of the data the respective parties will need to present their cases. Moreover, Gallo is not entitled to a jury trial under M.G.L. c. 93B § 4, thus providing this Court with more flexibility to schedule an expedited trial.

### B. Gallo's Right to a Jury Trial

Gallo may assert its right to a jury trial only with respect to its common law claims of unfair competition and intentional inter-

ference. It correctly notes that the speedy trial provision of Chapter 93B does not apply to those common law claims. Gallo's unfair competition claim may, however, be tantamount to a Chapter 93A claim as to which there is no right to a jury trial. Gallo will be directed to present evidence to this Court that its unfair competition claim is not a disguised 93A claim because if Gallo seeks damages under Chapter 93A even though it has no such remedy under Chapter 93B, the latter will prevail. To allow the Chapter 93A claim to proceed "would be to overlook the careful limitation on private remedies in c. 93B and render much of the statute surplusage." *Reiter Oldsmobile*, 393 N.E.2d at 378.

### III. *Conclusion*

Although Mazda's argument that a speedy trial will help it mitigate its potential damages while not unduly prejudicing the plaintiff is persuasive, to a point, it is not mandated by M.G.L. c. 93B § 4 and the allowance of Mazda's motion would impose undue hardship on the plaintiff. A compromise is warranted and will be imposed by the attached Scheduling Order.

### SCHEDULING ORDER

For the reasons stated in the Memorandum above, the defendants's Motion for Speedy Trial (Docket No. 3) is **ALLOWED, in part, and DENIED, in part,** as follows:

(1) The trial on jury and jury-waived issues will commence on Monday, March 25, 2002 at 9:00 A.M.

(2) Expedited discovery on the issues of standing and the sufficiency of Mazda's notice to Gallo will be completed on or before November 20, 2001, and dispositive motions thereon and on Gallo's contention that its common law unfair competition claim is a) distinguishable from a Chapter 93A claim, b) not subsumed by the provi-

sions of Chapter 93B and c) entitled to be tried by jury, will be filed on or before November 30, 2001 and responded to on or before December 14, 2001.

(3) The parties will designate their respective experts and provide Fed. R.Civ.P. 26 information to opposing counsel on or before January 31, 2001 and all other written discovery and oral depositions will be completed on or before February 28, 2002.

**So ordered.**